EDGAR A. BLANCHARD, Admr.,

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Penobscot.    Opinion May 8, 1917.

*Speed of railroad trains at crossings as regulated by R. S., 1903, Chap. 52, Sec. 86;*
*see also R. S., 1916, Chap. 57, Sec. 79.   General rule as to care of persons*
*approaching railroad crossing when gates are open.   Extent to which reli-*
*ance may be had upon open gates at railroad crossing.   Degree of care*
*required by traveler when approaching railroad crossing when*
*view of track is obstructed.   Degree of care required of person*
*in any vehicle, although not the driver thereof, in*
*approaching railroad crossing.*

This case was an action for damages brought by the administrator of the estate of J. Waldo Miles of Old Town to recover damages from the defendant company for injuries sustained by the plaintiff's intestate by reason of a collision of a train of the defendant company and an automobile in which the plaintiff's intestate was riding, the collision occurring at a crossing on Front Street in Old Town on August 3rd 1914.   The verdict of the jury was for the plaintiff, damages being assessed in the sum of $5320.83; and the case comes to this court on a general motion filed by the defendant to set aside the verdict on the grounds that it is not warranted by the evidence, and also that the damages are excessive.

While the fact of open gates at a railroad crossing is a circumstance which a traveller may properly take into consideration and upon which he may place some reliance, he is not thus relieved of all care.

The extent to which the traveller may rely upon the invitation given by open gates is a question of fact for the jury, unless it appears that he relied exclusively thereon.

The fact that the traveller is not the driver of the vehicle in which he is riding does not relieve him of all care.

Ordinarily when the view of the traveller of the railroad track is obstructed, greater care is required in looking and listening, even to the extent, if driving, of alighting.

Action on the case to recover damages on account of injuries received through the alleged negligence of defendant company. Defendant filed plea of general issue. Verdict for plaintiff in the sum of $5320.83. Motion for new trial filed by defendant. Motion sustained. New trial granted.

Case stated in opinion.

*James D. Rice, and W. R. Pattangall,* for plaintiff.

*Fellows & Fellows,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, MADIGAN, JJ.

BIRD, J. "This case was an action for damages brought by the administrator of the estate of J. Waldo Miles of Old Town to recover damages from the defendant company for injuries sustained by the plaintiff's intestate by reason of a collision of a train of the defendant company and an automobile in which the plaintiff's intestate was riding, the collision occurring at a crossing on Front Street in Old Town on August 3rd, 1914. The verdict of the jury was for the plaintiff, damages being assessed in the sum of $5,320.83; and the case comes to this court on a general motion filed by the defendant to set aside the verdict on the grounds that it is not warranted by the evidence, and also that the damages are excessive. The action was not brought for the purpose of recovering damages for the death of the plaintiff's intestate, altho he did die from the effect of the injuries received, but only for the pain and suffering, physical and mental, which he endured during his lifetime.

"It appears that the defendant company's track crossed Front Street, Old Town, at the foot of a hill and that the arrangement of buildings along the left [right] hand side of Front Street as passengers came down the hill toward the track was such as to prevent a person coming down the hill from seeing the track over which trains passed on their way from Bangor to Old Town station until within a very short distance of the track, when a small portion of the rails became visible. The crossing was a blind crossing. Because of this, the defendant company had erected gates, which when in operation, protected the Front Street Crossing. A little to the east of Front Street the defendant company had another grade crossing at Bosworth Street; and still farther to the east another grade crossing was maintained on

Center Street. The crossing at Bosworth Street, like that on Front Street, was protected by a gate, and on Center Street the defendant company maintained a flagman. On the easterly side of Center Street, and west of the railroad, there was erected by the company a small building in which the flagman had his station. The gates on both Bosworth Street and Front Street were worked from this station, so that in order to operate the gate on Front Street the gate tender did not need to go to that point.

"It appears in the evidence that this gate was not operated after the last regular train had gone thru Old Town in the evening, which was ordinarily about six o'clock. The gate tender usually locked his gate in the Bosworth Street gate house at about six P. M., unlocking the gates and putting them in service again at six A. M. The accident in which Mr. Miles met his death occurred at about seven P. M., and at the time of the accident the gate across Front Street was erect.

"It is admitted that the place where the accident occurred—namely at the Front Street Crossing—was near the compact part of the City of Old Town, and hence, the speed of the train comes under the regulations prescribed in Section 86, Chapter 52, of the Revised Statutes and was limited to six miles an hour.

"The testimony of the various witnesses fixes the speed of the train at from ten to eighteen miles an hour, the lowest estimate being ten miles and the highest eighteen. The witnesses for the defense admit a speed of ten or twelve miles an hour. Hence, the train was proceeding at an illegal rate.

"The plaintiff contends that the train approached this crossing without giving any warning by blowing a whistle or ringing a bell. The testimony of all of the witnesses, both for the plaintiff and defense, is that the last time the whistle was blown was at or near O'Connell's blacksmith shop, which was 1877 feet distant from Front Street. At the rate the train was running, this whistle was blown something like two minutes before the time of the accident. And, in view of all the evidence, it cannot be seriously argued that the attention of Mr. Miles was likely to have been attracted by the whistle.

"The evidence concerning the ringing of the bell is conflicting.—"

Such is the statement of the case contained in the brief of plaintiff.

The view which the court entertains of this case is such that it is not necessary to consider the negligence of defendant. The plain-

tiff's intestate and his companion, Bridges, who drove the automobile, proceeded from their home on Front Street, in a northwesterly direction, destined for a point which rendered necessary the crossing of the railroad.     The speed of the automobile was that at which a pedestrian would walk, as a man and his wife upon the sidewalk kept pace with the automobile practically until the railroad was reached.     While thus proceeding, the plaintiff's intestate, who sat upon the seat with the driver of the car, and the woman were engaged in conversation. From the time it took its northwesterly course towards the railroad until the collision, the automobile did not stop, nor did plaintiff's intestate request Bridges to stop it.     Although Bridges testified that he looked and listened as he approached the track (See *Blumenthal* v. *B. & M. R. R.*, 97 Maine, 255) there is no evidence, whatsoever, that plaintiff's intestate did either.     When the car was some thirty or forty feet from the track, two young men on the opposite side of the track endeavored to warn the occupants of the car by motions and shouting.     It is in evidence that at a distance of from 9 to 10 feet from the more easterly rail of the track a person could see as far northeasterly as the Bosworth Street crossing—substantially one hundred feet—and that at a point 13 feet and 7 inches from the easterly track, his view would extend 65 feet in the same direction. When Miles reached this point the front of the car would have been at least seven or eight feet from the track.     If plaintiff's intestate when he reached the latter point, had looked he must have seen the train, if he had listened he must have heard the bell, which the positive evidence conclusively shows was ringing, and the rumble and other noises of the train and in either case it is inconceivable that he would have failed to warn Bridges and request him to stop, but the car was not stopped nor did he speak to Bridges.     *Blumenthal* v. *B. & M. R. R.*, ubi supra.     The conclusion is irresistible that plaintiff's intestate exercised no care whatever in the premises, but relied exclusively upon the open gates, if he observed indeed, their position. Heedless disregard of the safety of himself and others marked his conduct.

While the fact of open gates is a circumstance which a traveller may properly take into consideration, and upon which he may place some reliance, this does not relieve him of all care.     *Romeo* v. *B. & M. R. R.*, 87 Maine, 540, 549; See *McCarthy* v. *B. & M. R. R. Co.*, 112 Maine, 1, 5, 7; *Borders* v. *B. & M. R. R.*, 115 Maine, 207, 212,

213. The extent to which he may rely upon the invitation given by open gates is a question of fact for the jury, unless it appears that he relied exclusively thereon; *Woehrle* v. *M. T. Railway Co.*, 82 Minn., 165; 52 L. R. A., 348. See also *Chase* v. *R. R. Co.*, 78 Maine, 346, 353. The fact that plaintiff was not the driver of the car did not relieve him of all care. *Wood* v. *M. C. R. R.*, 101 Maine, 469; *Allyn* v. *B. & A. R. R. Co.*, 105 Mass., 77, 79.

And ordinarily when the view of the traveller of the track is obstructed, greater care is required in looking and listening, even to the extent, if driving, of alighting, *Day* v. *B. & M. R. R.*, 96 Maine, 207; *Robinson* v. *Rockland T. and C. St. Ry.*, 99 Maine, 47. See also *Smith* v. *M. C. R. R.*, 87 Maine, 339; *Giberson* v. *B. & A. R. R. Co.*, 89 Maine, 337, 343. *Borders* v. *B. & M. R. R.*, 115 Maine, 207, 211, 212.

Upon all the circumstances of the case it must be concluded that plaintiff's intestate's negligence and want of care contributed to the occurrence of the collision and that the motion for new trial must be granted.