Edward LaGoy, as Administrator of the Estate of Nelson LaGoy, Deceased, Respondent, v. Director-General of Railroads, Appellant.

**Negligence — railroads — when occupant of automobile truck struck by engine at railroad crossing guilty of contributory negligence.**

1. A person cannot recover for the death of another, unless such other person was at the time of the occurrence, resulting in his death, in the exercise of ordinary care for his own safety, and his death was the result of the negligence of the defendant.

2. Where in an action to recover for the death of plaintiff's intestate occasioned by the running down of an automobile truck in which he was riding by one of defendant's engines at a railroad crossing, it appeared that for some time before the automobile reached the track the engine was in plain sight and was heard by those less favorably situated to hear it than the driver and intestate and could and should have been seen by each of them, and, though the intestate was not the driver, if he had looked in time he would have had abundance of opportunity to call the attention of the driver to the approaching

# 192 LaGoy v. Director-General of Railroads.

engine, or to jump from the truck in time to have avoided the collision, at least so far as he was concerned, the trial court was right in holding as a matter of law that intestate was guilty of contributory negligence.

LaGoy v. Director-General of Railroads, 191 App. Div. 680, reversed.

(Argued April 27, 1921; decided May 10, 1921.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 19, 1920, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

John M. Cantwell and E. W. Lawrence for appellant. The plaintiff's intestate was guilty of contributory negligence as a matter of law and a nonsuit was properly granted. (Krintzman v. I. S. Ry. Co., 84 N. Y. Supp. 243; Brickell v. N. Y. C. & H. R. R. R. Co., 120 N. Y. 290; Schron v. S. I. L. R. Co., 16 App. Div. 111; McAuliffe v. N. Y. C. & H. R. R. R. Co., 88 App. Div. 356; Fiddler v. N. Y. C. & H. R. R. R. Co., 64 App. Div. 95; Fogassi v. N. Y. C. & H. R. R. R. Co., 19 Misc. Rep. 108; 17 App. Div. 286; Turk v. N. Y. C. & H. R. R. R. Co., 108 App. Div. 142; Henavie v. N. Y. C. & H. R. R. R. Co., 10 App. Div. 64; MacSweeney v. Erie R. R. Co., 93 App. Div. 496; Swart v. N. Y. C. & H. R. R. R. Co., 81 App. Div. 402; Troy v. Rutland R. R. Co., 186 App. Div. 196.)

John E. Judge for respondent. The defendant was negligent and responsible for the death of plaintiff's intestate and the trial court was in error in granting defendant's motion. (Cane v. Smith, 89 N. Y. 379; Stern v. Hall, 142 N. Y. Supp. 477; Kettle v. Turl, 162 N. Y. 255; Delaney v. City of Mount Vernon, 89 App. Div. 209.)

Chase, J. The plaintiff's intestate was killed on May 6, 1919, while riding on a motor truck which was run over

by an engine and tender of the Rutland Railroad Company at a grade crossing at Irona, Clinton county. The railroad was at the time controlled, managed and operated by the defendant. The record discloses that the defendant was guilty of negligence because of running the engine at a high rate of speed without blowing a whistle or ringing a bell to give notice of its approach at the Irona crossing.

We are of the opinion that the trial court was right in holding as a matter of law that the plaintiff's intestate was guilty of contributory negligence that materially contributed to his death. It is urged that the complaint is sufficient to charge the defendant with willful negligence and assault. Even if the respondent is right in that claim, the evidence wholly fails to sustain such contention. We will refer to the facts, assuming that the complaint alleges a cause of action to recover damages for intestate's death by reason of the defendant's negligence.

The railroad station at Irona runs east and west. There is a highway on the north side of the right of way but a short distance from it which runs easterly and westerly. A road used for many years by the public runs on an up grade for fifty feet or more from such highway to and over the Irona crossing. The building occupied as a depot at Irona is on the south side of the track immediately at the left of the crossing, and there is a general store at the right of the crossing and about thirty-nine feet south of the track. Standing at the crossing one can see an engine coming on the track from the west for about a mile. At about forty-three feet north from the crossing the view is partially obstructed by a milk station building and platform, but one can there see an engine westerly on the track for about nine hundred feet.

The intestate was a young man who had commenced

13

an employment at the creamery that day and had spent the afternoon with another employee in becoming familiar with a truck that he was to drive the next day and in learning the location of the places from which he was to obtain the cream for his employers. The two had returned with the truck to the creamery, which is four hundred and sixty feet northwesterly from the crossing. It was about five o'clock in the afternoon of a clear day. A few minutes before the accident, a man, about forty or fifty rods from the crossing, going westerly with a team and heavy wagon, heard the engine coming when it was about a mile away. He had previously seen smoke coming from the railroad right of way. At the time of hearing the engine he saw the intestate and the driver of the truck at the creamery. At about the same time a young man was driving a team attached to a heavy wagon easterly nearly opposite the crossing. The truck with the intestate and driver passed this young man and turned towards the crossing and soon afterwards the collision occurred.

A young man employed in the store mentioned was engaged in front thereof and between it and the crossing about two or three minutes before the accident. He then saw the engine coming about a mile westerly. At the same time he saw the intestate cranking the truck at the creamery and then get on the seat with the driver and they started with the truck towards the crossing. When the driver turned from the highway to go towards the crossing and the witness realized that he was not reducing his speed, although the engine was fast approaching, he ran to the crossing and " hollered " and " waved them to stay back," and motioned with both his arms, but they came on without stopping or lessening their speed and the intestate was killed. The witness says that when he commenced to signal them to stop they were below the hill which means forty-three feet or more from the crossing. Even on the most favorable state-

ment of the speed of the truck and of the engine for the plaintiff, the engine was not going more than five to eight times as fast as the truck and it must necessarily have been in plain sight of both men all the time after the truck had turned from the public highway.    The witness also says that he did not see either the driver of the truck or the intestate look to see whether there was an engine approaching.

At the time the engine was approaching an employee of the milk station was engaged in his work in the building and heard some one hollering and he testified that he stepped to the door of the milk station and saw the truck making the bend towards the crossing and at least forty-three feet therefrom and that the engine was then passing the milk station.    The east end of the milk station is about three hundred and fifty-five feet away from the crossing.    He says that the engine and the truck were each in plain sight of the other.

The driver of the truck testified that he looked to the west and east as he turned from the highway towards the crossing, but does not claim to have looked after that. The intestate was probably wholly absorbed in watching the truck and the conclusion is irresistible that he did not look for the engine until it was too late.    The driver admits that he saw the young man near the store waving his hands across the track, but says that he thought it meant that he wanted him to stop at the store.

It seems to us incomprehensible that the driver of the truck could have misunderstood the man calling out and signaling for him to stop, or that he or the intestate should have driven from the highway to and upon the crossing without hearing or seeing the engine, which must necessarily have been during much of the time after they left the creamery and all of the time after the truck was within forty-three feet of the track within plain sight of them.    It was not only in plain sight, but it was heard by those less favorably situated to hear it

than the driver and intestate, and it could and should have been seen by them and each of them.

Counsel for respondent in his brief, referring to the engine, says it was "*going so fast, looking would be of little use because a person might miscalculate the speed it was going.*"

It is true that the intestate was not the driver of the truck, but if he had looked in time he would have had an abundance of opportunity to call the attention of the driver to the approaching engine, or to jump from the truck in time to have avoided the collision, at least so far as he was concerned.

A person cannot recover for the death of another, unless such other person was at the time of the occurrence, resulting in his death, in the exercise of ordinary care for his own safety, and his death was the result of the negligence of the defendant. (*Volosko* v. *Interurban St. Ry. Co.*, 190 N. Y. 206.)

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

Hiscock, Ch. J., McLaughlin and Andrews, JJ., concur; Hogan, Cardozo and Crane, JJ., dissent.

Judgment reversed, etc.