MARIA BOSCARELLO, ADMINISTRATRIX, (ESTATE OF SALVATORE BOSCARELLO) *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

First Judicial District, Hartford, October Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 8th—decided November 7th, 1930.

*Edward R. Brumley,* with whom was *Fleming James, Jr.,* for the appellant (defendant).

*Bernard E. Dubin,* with whom, on the brief, were *Joseph M. Freedman* and *Francis P. Rohrmayer,* for the appellee (plaintiff).

MALTBIE, J. The deceased was killed when the automobile in which he was riding as a passenger was struck by an engine of the defendant company at a grade-crossing. The plaintiff obtained a verdict and the defendant has appealed from the refusal of the trial court to set it aside, as well as from the judgment because of errors it claimed were committed in the course of the trial.

The defendant bases its appeal from the refusal of the trial court to set the verdict aside mainly upon the ground that the deceased was guilty of contributory negligence as a matter of law. Upon that issue the facts are substantially undisputed. The deceased was thirty-one years old. He lived and had lived for some ten years near the railroad and the crossing where the accident occurred. On the day of the accident, at his home, he entered the car of Albert E. Piscitello to go to Hartford with him. They traveled over a new highway, not then opened to traffic, to Jordan Lane over which was the crossing at which the collision happened. The new highway intersects Jordan Lane about four hundred feet westerly of the crossing and between that point and the railroad there was at the time no grade-crossing sign. Piscitello was unfamiliar with the locality and the deceased must have known this, because Piscitello asked him for directions as to the road to take when they came to Jordan Lane. Piscitello, who was called as a witness by the plaintiff and whose testimony was in no way discredited, states that he did not know there was any crossing at this point, that, as he drove the car toward it, he looked straight ahead, watching the road to avoid the bumps in it, that when he was about fifteen feet from the crossing, he first saw the approaching train and that the car was struck before he could do anything to avoid the collision. Witnesses for the plaintiff placed the speed of

the car at fifteen to twenty miles an hour. It was a Ford sedan, with two windows on each side, all being closed except that at Piscitello's left. The deceased sat upon the right side of the front seat, on the side from which the train came, and Piscitello states that from the time they entered Jordan Lane until the accident the deceased said nothing to him. Back of a point one hundred and twenty-five feet west of the railroad track, the view down the track in the direction from which the train came was very much obstructed; for a distance easterly from that point the only obstructions were some poles, a tree at the side of the road, and an open work tower carrying a power line over the track; then for a distance the view was also obstructed by a high wooden sign fifteen feet long almost parallel with the highway; but from a point about sixty feet westerly of the track, there was no obstruction in the way of looking a very considerable distance down the track, except the poles.

In the case of the driver of a motor vehicle, it is negligence to drive upon a railroad crossing without looking to see whether a train is approaching when sufficiently distant from the track to enable him to stop before reaching it should it be necessary to do so, to avoid being struck. *Douglas* v. *New York, N. H. & H. R. Co.*, 110 Conn. 145, 147 Atl. 289. In *Clarke* v. *Connecticut Co.*, 83 Conn. 219, 76 Atl. 523, we gave very careful consideration to the duty of a gratuitous passenger in an automobile. In that case the plaintiff was sitting beside her husband on the front seat of an automobile which was struck by a trolley car. Under the charge the negligence of the plaintiff was made to turn upon the question whether she saw or knew of the approach of the car before the accident. This we held to be erroneous, saying (p. 223): "Such an instruction in the husband's case would clearly have been errone-

ous. Does the fact that the plaintiff was a gratuitous passenger, having no control of the automobile, bring her within a different rule? That fact would have great weight in determining whether her conduct constituted due care. It would be one of the circumstances, and unquestionably an important one, to be considered in deciding whether her conduct was all that reasonable care on her part called for. A gratuitous passenger, in no matter what vehicle, is not expected, ordinarily, to give advice or direction as to its control and management. To do so might be harmful rather than helpful. But his presence in the vehicle may so obstruct the driver's view of a car or other approaching vehicle, or other circumstances of the situation may be such, as to make it his duty to look out for threatened or possible dangers, and to warn the driver of such after their discovery. This might be necessary for the passenger's as well as for the driver's safety. On the other hand, the character of the vehicle in which he is a passenger may be such, or his location in it, or the other circumstances, may be such, that to look or listen for approaching cars, or other dangers, would be unnecessary and useless. For such a passenger to engage in conversation with fellow passengers, and entirely neglect to look out for dangers, or to observe the manner in which the vehicle is being operated, might be the conduct of a reasonably prudent person. It cannot be said, therefore, that in every case, and all the time, it is the duty of a gratuitous passenger to use his senses, or to look and listen in order to discover approaching vehicles or other dangers, or that his failure to do so would be a failure to exercise due care. But while this is so, the law fixes no different standard of duty for him than for the driver. Each is bound to use reasonable care. What conduct on the passenger's part is necessary to comply with his duty

must depend upon all the circumstances, one of which is that he is merely a passenger having no control over the management of the vehicle in which he is being transported. Manifestly, the conduct which reasonable care requires of such a passenger will not ordinarily, if in any case, be the same as that which it would require of the driver. While the standard of duty is the same, the conduct required to fulfil that duty is ordinarily different because their circumstances are different."

This opinion states accurately and clearly the basis upon which is to be determined the question of the contributory negligence of a gratuitous passenger upon the front seat of an automobile. While ordinarily he is under no duty to look out for or guard against possible dangers, there are circumstances in which reasonable care on his part requires that he do so. These circumstances may arise out of the manner in which the automobile is being operated, but only if the negligence of the driver is so apparent and gross that the passenger is bound to know it. *Duffy* v. *Bishop Co.*, 99 Conn. 573, 579, 122 Atl. 121; *Tracy* v. *Welch*, 109 Conn. 144, 148, 145 Atl. 662. Or, as in the *Clarke* case, it may arise out of the existence of a situation so inherently dangerous that a passenger who fails to look out for perils naturally to be anticipated may not be in the exercise of the care of a reasonably prudent person. This does not mean that a passenger is ordinarily under any duty to be watchful for the dangers usually incident to automobile traffic upon the highway, nor that he should ordinarily attempt to control or advise as to the operation of the car when such dangers arise; nor does it mean that he may not be justified in certain circumstances in placing entire reliance upon the vigilance and care of the driver of the car or, in such reliance, in busying himself about

other affairs or even in sleeping. *Bushnell* v. *Bushnell,* 103 Conn. 583, 593, 131 Atl. 432. So the extent to which a passenger should exercise vigilance to anticipate peril in dangerous situations may depend upon his position in the car and the relative opportunity the driver has to observe conditions and anticipate dangers. Thus in *Weidlich* v. *New York, N. H. & H. R. Co.,* 93 Conn. 438, 106 Atl. 323, we held that there was no duty upon a passenger in the rear seat of a closed car to watch out for the approach of a train at a railroad crossing, particularly as in that case, as we pointed out in *Tracy* v. *Welch, supra,* page 150, the train was not visible to the occupants of the car until it was within about twenty feet of the crossing and the plaintiff had little if any opportunity to appreciate the danger and to do anything to warn against it or safeguard himself.

Because of the very limited nature of the duty of a passenger in an automobile to exercise care to guard himself from dangers incident to its operation, the question of his contributory negligence must usually be one of fact for the jury. There are, however, few situations where watchfulness for his own protection is so within the bounds of reasonable care upon the part of a passenger in an automobile as in the approach to a grade-crossing known to him. Almost with unanimity courts have held that in such situations and in absence of circumstances of excuse, there is a duty resting upon him to be reasonably watchful for the approach of trains. Notes, 18 A. L. R. 315, 22 A. L. R. 1294, 41 A. L. R. 767, 47 A. L. R. 295.

In the case at bar the deceased was riding with a driver who was unfamiliar with conditions at the location, and was looking straight ahead watching the road before him. The deceased, on the other hand, knew of the existence of the track and must have been

familiar with the situation at the crossing. He was seated upon the front seat upon the side from which the train was coming. The view of the track was somewhat obstructed, particularly for the driver on the left side of the seat. The deceased, had he looked with any degree of care commensurate with the needs of the situation, could have seen the train. The automobile was proceeding at only fifteen to twenty miles an hour and a warning to the driver in time to stop it before reaching the track would not have introduced into the situation any new element of danger and in all reasonable probability would have been effectual to prevent the accident. No circumstances justifying the failure of the deceased to take any precautions for his own safety appear. We cannot do otherwise than hold that the deceased was guilty of contributory negligence as a matter of law. We cite a few of the many cases in which, in analogous situations, other courts have reached like conclusions. *LaGoy* v. *Director-General of Railroads,* 231 N. Y. 191, 131 N. E. 886; *Fogg* v. *New York, N. H. & H. R. Co.,* 223 Mass. 444, 111 N. E. 960; *Noble* v. *Chicago, M. & St. P. Ry. Co.,* 298 Fed. 381; *Blanchard* v. *Maine Central R. Co.,* 116 Me. 179, 182, 100 Atl. 666; *Kirby* v. *Kansas City, K. V. & W. Ry. Co.,* 106 Kan. 163, 186 Pac. 744; *Harris* v. *Spokane, P. & S. Ry. Co.,* 123 Wash. 274, 212 Pac. 187; *Jameson* v. *Norfolk & W. Ry. Co.,* 97 W. Va. 119, 124 S. E. 491; *Virginia & S. W. Ry. Co.* v. *Skinner,* 119 Va. 843, 89 S. E. 887.

Inasmuch as, in view of the thoroughness with which the case was tried, a different situation as regards the conduct of the deceased would not be likely to be developed upon a new trial, we do not consider the other claims of error.

There is error and the case is remanded with direc-

tion to the Superior Court to set the verdict aside and order a new trial.

In this opinion the other judges concurred.