WALTER BYCSZYFKSI, p.p.a.

*vs.*

McCARTHY FREIGHT SYSTEM, INC., ET AL.

Superior Court      New Haven County      File No. 59536

MEMORANDUM FILED AUGUST 21, 1941.

*Edward L. Reynolds,* and *Marvin C. Gold,* of New Haven, for the Plaintiff.

*Martin E. Gormley,* and *Philip R. Shiff,* of New Haven, for the Defendant, McCarthy Freight System, Inc.

*Edwin H. Hall,* of New Haven, for the Defendant, Connecticut Company.

McEVOY, J.   This action was brought to the Superior Court at New Haven on the first Tuesday of October, 1940, against two defendants—the named defendant, McCarthy Freight System, Inc., and the Connecticut Company.

On September 30, 1940, before the return day of the writ, appearance was entered on behalf of the named defendant by Philip R. Shiff, Esq.   Thereafter, appearance was entered for the same named defendant on April 14, 1941, by Martin Gormley, Esq.   The case was tried during the month of June in the Superior Court at New Haven and verdict rendered on June 11, 1941, in favor of the plaintiff to recover of the named defendant $25,000 damages.

Upon the trial the plaintiff was represented by Attorneys Marvin C. Gold and Edward L. Reynolds; the defendant, Connecticut Company, by Attorney Edwin H. Hall, and the named defendant by its attorneys of record.

By an agreement of the parties, which was approved by the trial court, extension of time was granted for filing of motion to set aside the verdict and for the arguments on the motion.

On July 31, 1941, after oral argument of this motion before the trial judge then sitting in chambers at Waterbury, memorandum in support of the motion of the named defendant to set aside the verdict was duly filed.

Within a few days thereafter, memorandum on behalf of the plaintiff addressed to the motion to set aside the verdict was duly filed.

In the memorandum in support of the motion of the named defendant to set aside the verdict practically three assignments of error are made.

The first is that the court erred in failing to give the jury any instructions to aid it in determining whether any negligence of the truck driver was superseded by negligence of the driver of the automobile in which the plaintiff was riding, or by negligence of the driver of the bus belonging to the defendant, Connecticut Company, or by negligence on the part of both operators. It is set up, in the memorandum of the named defendant, that: "Determination of this question was essential to a finding as to the liability of the defendant, McCarthy Freight System", and the case of *Corey vs. Phillips,* 126 Conn. 246, 254, is cited to the effect that "it was therefore the court's duty to adequately explain to the jury the nature of superseding cause as related to the circumstances of this case by directions sufficient to bring them to a legal conclusion." *Boileau vs. Williams,* 121 Conn. 432, is also cited in support of this point.

As a further ground it was submitted that the verdict should be set aside "because of the failure of the court to charge as to the burden of proof upon the issue of damages. In view of the serious conflict of evidence as to the nature and extent of the injuries sustained by the plaintiff, the failure of the court to give the jury an instruction upon this point which was essential for their guidance in arriving at a proper conclusion must be regarded as reversible error and requires that the verdict be set aside upon this ground."

The statement of the general principle, with respect to the

duty of the court as to proper instructions to the jury, was cited from *Pietrycka vs. Simolan,* 98 Conn. 490, 499, where our Supreme Court said: "Both parties in every action have the right to expect that the court will direct the jury concerning every question of law arising in the trial of each case as completely and distinctly as if the question had never arisen in another action....*And whether requested or not,* it is the duty of the court in every case to give to the jury sitting in that case such instructions as are applicable to the issues raised and sufficient for their guidance in coming to a verdict in the case before them....If no request be made that the court charge upon a certain point, and its attention be not called to that point in any way, and its failure to give instructions on that point occur through inadvertence, still the omission will be an error, if the omitted matter was essential to a legal consideration and disposition of the case by the jury." (Italics added.)    Also cited to the same effect was *Gross vs. Boston, Worcester & New York Street Ry. Co.,* 117 Conn. 589.

Another ground set up in the memorandum of the named defendant is that: "The verdict in the instant case so far exceeded the bounds of fair competition as to warrant the conclusion that the verdict was not properly arrived at, either because of inadequate guidance for their deliberations or, because of improper considerations, or improper motives."

It thus appears that all of the assignments of error, in whole or in part, are based upon claimed palpable, plain, prejudicial errors in the charge.

The duty of the trial court, with respect to instructions to the jury, respecting the applicable principles of law, has been repeatedly and clearly defined.   It is an unqualified duty to charge adequately and correctly and this is as it should be.

Unfortunately, the duty of counsel, *if any,* with respect to rendering any assistance either to the client or to the court, respecting adequate instructions to the jury, is not so clearly defined.

Sometimes, after the charge, or even during the charge, alert, attentive and cooperative counsel conscious of a continuing duty to protect the interest of the client and to cooperate with the trial court and in the interest of the attainment of speedy and ultimate justice, are interested enough to direct the at-

tention of the court to palpable, plain and prejudicial errors or omissions in the charge.

Such interventions by counsel are, of course, welcomed as an aid toward the attainment of justice.

The general rule, irrespective of statute, as to the time for objection or exception to the charge, is set out as follows: "In the absence of any statute providing otherwise, objections or exceptions to instructions or refusal to instruct must be taken at the trial in order to be available, and, even though the statute dispenses with the necessity of formal exceptions, the attention of the court must in some way be called to alleged errors, in time to give it an opportunity to correct them." (64 C.J. Trial §730).

This rule has been generally construed to require such objections or exceptions to be taken at the time the instructions are given or are refused, and before the retirement of the jury, and some of the cases have held that such objections or exceptions must in any event be made before the rendition of the verdict, unless more time is allowed, or unless the objecting party is prevented from excepting in proper time. In some jurisdictions it has been held that it is discretionary with the court to call for exceptions to the charge while the jury are still in the court room, and that whether it should permit further exceptions to be taken after the jury has retired, is also within the discretion of the court.

An objection or exception first taken after a verdict, or on a motion for a new trial, comes too late and will not be considered.

In many jurisdictions the practice in this respect is now regulated by statute or rule of court, either affirming or changing the common-law rule. (64 C.J. Trial §730.)

On page 937 of volume 64 Corpus Juris is found a reference to the only Connecticut case which is cited, Camp vs. Tompkins, 9 Conn. 545. In that case the first paragraph of the syllabus reads as follows: "The time within which notice of an intention to file a bill of exceptions to the charge of the court must be given, not being prescribed by law, but resting in the discretion of the court trying the cause, it will not be deemed, by the court above, a sufficient ground for expunging from the record or disregarding the matters stated

in a bill of exceptions allowed, that no such notice was given until after verdict." This case was decided at the July term, 1833.

The trial court has been unable to discover any citation, amplification or modification of that decision.

That is not to say that there has been no modification or change in decision, but simply that the trial court has not been able to find it in *Shepard's Citations* or in other volumes.

It may very well be that the able counsel, who are participating in this appeal, may find a citation or the citations of the *Camp* case and they may embody this citation or these citations in their briefs—if they feel so disposed.

Before the beginning of the presentation of evidence in this case and during the time when evidence was being presented, and before the court undertook to give any instructions to the jury, the presiding judge, on four separate and distinct occasions, in chambers and, of course, in the presence of all counsel, requested all of the counsel to cooperate by furnishing written requests to charge.

The counsel for the plaintiff, upon the first request, immediately cooperated and did furnish, in the presence of all other counsel, written requests to charge.

Subsequently, during discussions in chambers, always in the presence of all counsel, counsel for the plaintiff withdrew some of the claimed requests to charge and stated that it was essential that proper requests be given and that the law be plainly stated and that counsel for plaintiff considered some of his requests to charge as too favorable to the plaintiff and as, probably, prejudicial and as probable bases for reversal and for the ordering of a new trial, which counsel for the plaintiff wished to avoid.

This cooperation was very much appreciated by the trial judge and may—or may not—have preserved the plaintiff's rights.

The charge, as delivered, shows that during the time that the charge was being delivered, the trial court, on four separate and distinct occasions, stopped and asked all counsel whether there were any suggestions as to corrections of the charge and the supplying of omissions.

On no one of these four different occasions, during the attempted instructions to the jury, did counsel for the named defendant make any response to the court's request for enlightenment.

The assumption of the trial court, since proved to be erroneous, was that defendant's counsel detected no errors or omissions in the charge.

The case was actually tried on behalf of the named defendant by Attorney Martin Gormley, who conducted his examinations in his usual terse, thorough and yet detailed manner.

Mr. Shiff seemed to take no active part in the examination of witnesses but did frequently confer with his associate, Mr. Gormley. It seems almost a matter for judicial notice that Mr. Gormley tries a great many cases and it is also a matter for judicial notice that Mr. Shiff not only tries cases in court but is an experienced annotator of the various restatements and other books.

Counsel, of course, are at liberty to arrange their own division of the entailed work as they see fit. It would seem a fair observation, however, to assume that, since Mr. Gormley was doing the actual trial work, a fair part of the work could probably have been assigned to Mr. Shiff to prepare and submit the requests for charge.

Of course it may very well be that the presently claimed errors or omissions in the charge did not then strike counsel for the named defendant as forcibly and as grievously prejudicial as they now do—or it may even be possible that they were not then detected by counsel for the named defendant, although it may be unfair to attribute such inattention or dereliction to counsel to whose care matters of such importance were committed.

There seems to be a convention or usage, even if not an express rule, that counsel are under no duty to cooperate with the court, by way of any suggestion as to a proper and sufficient charge to be made to the jury.

The omission to require such cooperation and assistance on the part of counsel, with respect to requests to charge, is in strange contrast to some of the other requirements of counsel.

With respect to objections to evidence, section 158 of the *Practice Book* (1934) provides that: "Whenever an objection to the admission of evidence is made, counsel shall state the ground upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point.

"Exception to the ruling must be taken in order to make it a ground of appeal."

It will be observed that the last sentence is mandatory. Its obvious purpose is to acquaint the court with the workings of the mind of counsel, and to afford the trial court an opportunity to correct its own impressions and to make them conform to the rules in such cases as laid down in the decisions of our Supreme Court.

The generally accepted rule as to when objections to a question must be interposed has been stated to be: "For evidence contained in a specific question, the objection must ordinarily be made as soon as the question is stated, and before the answer is given; unless the inadmissibility was due, not to the subject of the question, but to some feature of the answer." *Hackenson vs. City of Waterbury,* 124 Conn. 679, 683, quoting from Wigmore.

And, further, on the same page, quoting again from Wigmore: "It [the rule] must have a reasonable interpretation. The object is to prevent a party from knowingly withholding his objection, until he discovers the effect of the testimony, and then if it turns out to be unfavorable to interpose his objection."

Just prior to that decision under somewhat similar circumstances, our Supreme Court said: "As disclosed by the record, the attorney for the defendant purposely withheld his objection until the answer was made and then moved to strike it out. This is not a case where the question of admissibility cannot be determined until the answer is in. It is a clear case of gambling on the answer." *D'Andrea vs. Rende,* 123 Conn. 377, 383.

The matter of presenting and raising claims as to the law,

in trials to the court, is similarly hedged about with restrictions as is shown by another section of the *Practice Book* (§157), which reads as follows: "*Raising Questions of Law*. In trials to the court, if counsel intend to raise any question of law which may be the subject of an appeal to the Supreme Court of Errors, he must state the same distinctly to the court before his argument is closed, and in such time as to give the opposing counsel an opportunity to discuss the question, and must request the court to take note of the point. If this be omitted, it will not be the duty of the court to decide the question. Counsel shall present these questions of law in writing, unless the exigencies of the case render this impracticable."

It will be observed that, in contradistinction to what seems to be the prevailing custom, or rule if there be any, in respect to the instructions to the jury, it is made the definite duty of the counsel to raise the question of law before the trial court so that the court may not only know what it is but that the court may also grant all counsel an opportunity to be heard in argument and then decision must be made during the trial.

It seems strange that, since the trial judge will be subsequently available and may be in a position to have the matter called to his attention, that the insistence be that the point of law be definitely raised during the trial, yet that, in a jury case, where nothing is said to the court about any claims as to error or omission in the charge, and long after the jury has been discharged and is no longer available, yet for the first time the claimed errors or omissions may be called to the attention, not of the trial judge, but to the court of review, when it is too late to do anything about it and when it is simply a question of whether or not the error or omission constitutes reversible error.

To say the least, this sort of situation connotes very little heed to or regard, on the part of counsel, for the expense of a new trial and the preservation of the real rights of the litigants.

As to the requests to charge, the only rule, pertinent to the matter in point, if it be pertinent, seems to be as follows: "*Requests to Charge*. Requests to charge the jury must be filed in triplicate and in writing with the clerk, before the beginning of the argument, and he shall file them and forthwith hand one copy to the court and one to the opposing coun-

sel. All other requests may be disregarded, and failure on the part of the court to comply therewith cannot be made a ground of appeal.

"When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated, with the citation of authority upon which such suggestion is based. If the request is granted, the court shall apply the proposition of law to the facts of the case.

"A principle of law should be stated in but one request and in but one way. Requests attempting to state in different forms the same principle of law as applied to a single issue are improper." *Practice Book* (1934) §156.

Singularly enough, in the first paragraph of this section of the rule, it is provided that the requests to charge, if to be filed at all, must be filed before the beginning of the argument, and that all requests other than those contained in the written requests so filed may be disregarded.

What an anomaly it is to consider that there is a definite provision as to the time *when* requests to charge may be filed and as to the form and manner in which they are to be filed, but that there is no provision placing any requirement or duty upon counsel to file any request. In other words, under the present convention or system, it seems to be the absolute right of counsel to sit silent and listen to any number of mistakes or errors or omissions from the charge and to say nothing about it until every opportunity has passed to revise or correct the errors, omissions or mistakes, and then, after all opportunity for correction has passed, for the first time to impose upon the court of review the duty of determining the question as to whether or not these claimed errors, omissions or mistakes constitute not only prejudice, but reversible error.

It would seem a more orderly system if counsel were required to make known these claimed prejudicial errors in time to give the trial court an opportunity to rectify or correct them.

When a litigant is unfortunate enough to be involved in litigation he, naturally, places the entire charge of his case in the hands of an attorney or attorneys.

These attorneys are held out by the bar examining com-

mittee to the people of the State of Connecticut as competent persons to be entrusted with the care, preparation and trial of cases.

If an architect were employed to draw plans for a house and to supervise its erection he might, in the course of his supervision, observe that certain pillars or fundamental parts of the house were being omitted. Naturally, he would immediately be required, in good faith at least, to call these omissions to the attention of the contractor in order that they might be remedied then and there. He would not be expected to observe these omissions and to remain silent and to say nothing about them upon the theory that, if later the contractor became involved in litigation with the owner, the architect, who was supposed to supervise the erection and construction, might reserve this thought secretly so as to present it as a counterclaim against the contractor in case he brought suit against the employer of the architect.

It needs no citation to indicate that the established rule is that the passenger in an automobile may ordinarily go to sleep, sing, read or do anything he likes so long as he does not interfere, unduly, with the operation of the car.

This is not, however, an absolute rule, for even this passenger is held to some degree of care.

"Because of the very limited nature of the duty of a passenger in an automobile to exercise care to guard himself from dangers incident to its operation, the question of his contributory negligence must usually be one of fact for the jury." *Boscarello vs. New York, N. H. & H. R.R. Co.,* 112 Conn. 279.

In the approach to a grade crossing known to him, in the absence of circumstances of excuse, there is a duty resting upon the passenger upon the front seat of an automobile to be reasonably watchful for the approach of trains. *Clarke vs. Connecticut Co.,* 83 Conn. 219.

Again it seems rather anomalous to hold that the passenger, who ordinarily has no duty, nevertheless must, under certain circumstances, observe what is reasonably observable to him and, if necessary, give warning to the driver.

Contrast this with the position of the attorney who is, theoretically at least, competent to observe the mistakes of the

trial court and who is entrusted, for compensation, by his client with the entire care and charge of the litigation, and yet, according to the present generally accepted theory of practice and procedure, he may sit calmly by, permit the harm to be done and do nothing about it until it is definitely too late to do anything, and then may, for the first time, call the matter to the attention—not of the trial court where some remedy might be had—but to the reviewing court.

It may be that the claimed rule, as set out in the case of *Camp vs. Tompkins,* 9 Conn. 345, is still in effect and enforce-able. If not, it would seem worthy of consideration to de-cide whether or not there should be a rule drafted which would place a requirement upon counsel to make known ob-jections to the charge while there is still time to remedy the situation, as is done in the Federal courts and in New York and other places.

When all is said and done, the courts are for the protection of litigants. If it were not for the litigants neither the judges nor the attorneys would be there.

The duty of the judge is clearly defined.

The present claims indicate, either that the trial judge did not know the law, or that he was not sufficiently attentive in looking up the law in order that he might explain the prin-ciples of law to the jury. The attorney is as much an officer of the court as is the judge. The attorney ought to have some duty with respect to the charge. If he has any duty it ought to be defined by interpretation or, if not, then by rule.

The litigant ought not to be left in so uncertain and danger-ous position. His attorney, whom he employs to look out for his interests, ought to be required to be active and not passive in doing so.

It would be unfair to the competent counsel for the named defendant to attribute to them, or either of them, any desire to withhold any cooperation from the court, the need for which was then known to him or them.

At the same time, it may fairly be suggested that, if these claimed difficulties in the charge are so grave, then competent counsel, with nothing to do during the time it takes to deliver the charge, but sit there and listen, ought to be sufficiently well versed not only in the general principles of the law, but in the particular principles as applied to the particular case

after the intensive study and preparation which is expected of all counsel, to be in a position to call these prejudicial matters to the attention of the court in time to have something done to protect the interests of the client and to save additional expense to the State of Connecticut.

The action of counsel for the named defendant, in the instant case, is in sharp contrast with that of counsel for the plaintiff in *Mourison vs. Hansen,* 128 Conn. 62, where, at page 64, it appeared that the plaintiff had made proper and orderly requests in writing for instructions to the jury but the court, erroneously, failed to comply with those requests and, upon appeal, the interests of the plaintiff were, then and there, definitely protected and counsel for the plaintiff, by due diligence and by following up the matter as attorneys should, secured a reversal of the judgment entered upon the verdict and a new trial and thus, despite the error of the trial court, justice was ultimately attained.

In one of the cases cited as authority on this motion to set aside the verdict, *Gross vs. Boston, Worcester & New York Street Ry. Co.,* 117 Conn. 589, it appears, in the record, that counsel for the defendant did, in that case, file some requests to charge and cooperate with the court to that extent. This is in sharp contrast with the claimed situation existing in the instant case where, notwithstanding that before and during the progress of the trial and before the submission of the case to the jury, the trial judge made several separate oral requests for assistance to all of the counsel and yet there was no response to any of these suggestions except on the part of counsel for the plaintiff and no response from either of the counsel for the defendant who now complain of the court's action—or lack of it.

The trial court is asked to set aside the verdict mainly for claimed errors in the charge. If prejudicial error exists the remedy should be applied in the court of review. The trial courts have been repeatedly and consistently admonished to exercise great care in setting aside verdicts by reason of claimed errors in the charge. This rule is clear and understandable and, in the instant case, will be followed.

In so far as the claim is made that the verdict is against the evidence, a careful study of the record indicates that there was a substantial basis for the verdict of the jury.

The motion to set aside the verdict is denied.