ANDERSON v. UNION PAC. R. CO.

No. 4912.   Decided June 26, 1930.   (289 P. 146.)

*King & King,* of Salt Lake City, for appellant.

*Geo. H. Smith, J. V. Lyle, R. B. Porter,* and *W. Hal. Farr,* all of Salt Lake City, for respondent.

ELIAS HANSEN, J.

The plaintiff brought this action to recover damages for the death of Arthur Glen Anderson. In his complaint, the plaintiff alleges that he is the administrator of the estate of Arthur Glen Anderson, deceased, and was so appointed by the district court of Weber county, Utah. He also alleges that the death of Arthur Glen Anderson was caused by the negligence of the defendant in the operation of its train. The defendant answered, denying any negligence on its part, and alleged that the deceased's death was caused by his own negligence. The only language contained in defendant's answer in the nature of a denial that the plaintiff was the administrator of the estate of Arthur Glen Anderson is the following: "The defendant denies each and every allegation in said amended complaint contained not herein specifically admitted." A jury was impaneled to try the cause, and the plaintiff gave evidence in support of the allegations of his complaint. At the conclusion of plaintiff's evidence in chief, the defendant moved the court to direct a verdict in its favor. The motion was granted, and a verdict rendered by the jury as directed. The plaintiff appeals. The principal ground relied upon by the plaintiff for a reversal of the judgment is the alleged error of the learned trial judge in directing a verdict in favor of the defendant. The motion for a directed verdict was based upon the following grounds: (1) That the plaintiff was not the administrator of the estate of

Arthur Glen Anderson at the time this action was begun; (2) that there is no evidence tending to show that the death of Arthur Glen Anderson was caused by any of the alleged acts of negligence of the defendant; (3) that the evidence affirmatively shows that the death of Arthur Glen Anderson was caused by his own negligence.

Comp. Laws Utah 1917, § 6594, provides:

"In all actions, allegations of the execution of written instruments and indorsements thereon, of the existence of a corporation or partnership, or of any appointment or authority, or the correctness of any account duly verified by the affidavit of the party, his agent or attorney, shall be taken as true, unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

Plaintiff's complaint is verified. In order to raise an issue and place plaintiff on his proof of his appointment as administrator of the estate of Arthur Glen Anderson and of plaintiff's authority to sue as such, it was necessary for the defendant to specifically deny under oath ■ such allegation or to affirmatively allege under oath that plaintiff was not such administrator. *Brewer* v. *Romney,* 50 Utah 236, 167 P. 366; *Gray's Harbor Lbr. Co.* v. *Burton Lbr. Co.* 65 Utah 333, 236 P. 1102; *Intermountain Ass'n of Credit Men* v. *Mahleres et al.* (Utah) 282 P. 1029. The defendant did not specifically deny that the plaintiff "was the duly appointed and now is the administrator of the estate of Arthur Glen Anderson, deceased," and therefore such allegation which is contained in plaintiff's complaint must be taken as true.

The evidence shows that before this action was begun the plaintiff had filed in the probate division of the district court of Weber county, Utah, his petition for letters of administration of the estate of Arthur Glen Anderson; that notice was given of the time and place set for the ■ hearing of the petition; that an order was made appointing the plaintiff administrator of such estate; and that plaintiff had filed his bond as directed by the order of ap-

pointment. The record fails to show that the plaintiff had taken his oath of office as such administrator or that letters of administration had issued to plaintiff before the commencement of this action. During the course of the trial of this action, plaintiff took his oath of office, and letters of administration were issued to him. Plaintiff contends that, when he took his oath of office and letters of administration were issued to him, his authority to represent the estate in matters calculated to benefit the estate related back to the time of his appointment and validated his bringing of this action which was for the benefit of the estate. In support of such contention, the following authorities and cases are cited: 23 C. J. 1180, § 400; *Archdeacon* v. *Cincinnati Gas & Electric Co.,* 76 Ohio St. 97, 81 N. E. 152; *In re Murray's Estate,* 56 Or. 132, 107 P. 19. The authorities and cases cited support plaintiff's contention and are founded upon sound principles of law. The plaintiff has authority to prosecute this action as the administrator of decedent's estate.

At the time complained of, the defendant was operating a steam railroad through Weber Canyon. The railroad track runs in an easterly and westerly direction. On a part of its right of way the defendant maintained a double track and on a part a single track. The Christensen Construction Company was employed by the defendant to construct the grade for an additional track running parallel with a portion of the single track. Arthur Glen Anderson was fatally injured while he was employed by and was working for the Christensen Construction Company. His duties at the time he was killed were to operate a pump and maintain a pipe line which were used to supply water for a steam shovel and a "dinky" steam engine, which were being operated by the Christensen Construction Company in the construction of the railroad grade. The water was forced through the pipe line by the pump and delivered near the steam shovel. As the location of the steam shovel changed, the pipe line was lengthened or shortened so that the water could at all times

be delivered at the steam shovel. The steam shovel was used to load gravel onto railroad cars. The "dinky" engine was used to move the loaded cars from the steam shovel to the place where they were to be unloaded and to then move the empty cars back to the steam shovel to be reloaded. The "dinky" engine was supplied with water while it was at the end of the pipe line near the steam shovel. At the time in question, the pump was located on the south side of the railroad tracks and about 800 feet westerly from the steam shovel which was on the north side of the railroad tracks. The pipe line extended from the pump under the south railroad track, thence between the railroad tracks to a point opposite the steam shovel thence under the north railroad track to the steam shovel. The south track was being used by the defendant for the operation of its trains. The north railroad track was being used by the Christensen Construction Company for the operation of its "dinky" train in hauling the gravel for the grade which was being constructed. The distance between the north rail of the south track and the south rail of the north track was about six feet. The pipe line ran midway between the two tracks. The railroad track which was used by the defendant for the operation of its trains was straight for a distance of more than 1,000 feet easterly from the place where Anderson was struck. Extending easterly from about 1,000 feet from where Anderson was injured, the defendant used two tracks for the operation of its trains. West-bound trains were operated over the north track until they reached the point about 1,000 feet easterly from where Anderson was struck and were there switched onto the south track. The evidence shows that on the day in question, and about twenty or thirty minutes before he was killed, Anderson went to the easterly end of the pipe line for the purpose of removing two lengths of pipe. When last seen alive, he was engaged in that work. He was killed by defendant's work train consisting of an engine and nine cars which came from the east and were

moving west. The engine of the work train was facing east, and the cars were to the east of and in front of the engine. Thus as the train moved westward the tender of the engine constituted the front of the train. So far as appears, no one saw the train strike Anderson, and it was not until the entire train had passed over him that he was discovered lying between the rails of the track over which the train had just passed. Blood and particles of clothing found on the railroad track after he was killed tended to show that he was struck near the east end of the pipe line. He was picked up after he was injured about 75 or 80 feet to the west of the east end of the pipe line. As defendant's work train came from the east, it stopped for orders at the point where it was switched from the north to the south track about 1,000 feet east of the place of the accident. After the engineer in charge of the work train received his orders, he proceeded westerly, and, after he had gone about 1,000 feet, the accident occurred.

The plaintiff alleges in his complaint that the defendant, its agents and servants, were negligent in four particulars at the time Anderson was killed: (1) Failure to sound the whistle or ring the bell on the engine which was moving the work train; (2) failure to keep a brakeman or flagman in front of the train in the direction in which it was moving; (3) operating the train at an excessive rate of speed; (4) failure to maintain any lookout for the employees of the Christensen Construction Company. The plaintiff called as a witness the engineer who was operating defendant's work train at the time of the accident. He testified that he sounded the whistle on the engine when he started the train in motion at the point about 1,000 feet east of where Anderson was struck, and that the bell on the engine was ringing all the time that the train was in motion and until the train was stopped after the accident. Edgar Redden was called as a witness by the plaintiff. He testified that he was working for the Christensen Construction

Company as a brakeman on the "dinky" train on the day of the accident; that he was at the steam shovel when Anderson was struck; that he believed the whistle on the engine attached to the work train was sounded at the semaphore, which is about 1,000 feet east of where Anderson was struck; that he had no remembrance of hearing the bell as the work train approached the place of the accident. Jack Thompson was also called as a witness by the plaintiff. He testified that he was on the steam shovel at the time in question; that he did not hear any bell ringing or any whistle blowing on the work train as it passed by just before it struck Anderson. The foregoing is, in substance, all of the testimony touching the question of the claimed negligence of the defendant in failing to sound the whistle and ring the bell as the train approached the point of the accident. Upon this evidence the plaintiff was not entitled to go to the jury on such questions. The testimony of a witness which is merely to the effect that he did not hear a whistle blown or a bell rung is not sufficient to overcome positive and direct testimony that the whistle was sounded and the bell rung. To entitle negative testimony such as that of Redden and Thompson affecting the ringing of the bell and the blowing of the whistle on the occasion in question to any probative value, it must be made to appear that they were paying some attention to what actually occurred and that they were in a position where they could and did observe what was done or what was not done. *Clark* v. *Union Pacific Railroad Company* (Utah) 257 P. 1050, and cases there cited. Counsel for plaintiff attempted to impeach the testimony of the engineer who was operating defendant's work train by showing that he had stated at the coroner's inquest which was held on the day after the accident that the bell was not ringing at the time of the accident. Complaint is made because the learned trial judge refused to permit such impeaching evidence. Even if such impeaching testimony had been admitted, plaintiff would not have had any evidence in support

of his allegation that the bell was not rung on the occasion in question. If the plaintiff had been permitted to show that the engineer who operated the work train testified at the inquest that the bell was not rung on the occasion in question, such testimony may have weakened or even destroyed his testimony given at the trial, but the engineer's testimony given at the inquest could not properly be received or considered in determining whether the bell was or was not ringing at the time of the accident.

Upon this record there is no merit to the claim made by the plaintiff that the defendant was negligent in failing to keep a brakeman or flagman on the front of the train in the direction in which the train was moving. So far as is made to appear, the fact that the engine was being operated backwards at the time of the accident did not obstruct the view of the engineer. In the absence of proof, we cannot assume that the tender of the engine interfered with the ability of the engineer to observe the track in the direction in which the train was moving. There is no evidence whatsoever in support of the allegation that the train was being operated at an excessive rate of speed at the time complained of.

We are of the opinion that the case should have been submitted to the jury on the question of the alleged negligence of the defendant, its agents and servants, in failing to maintain a lookout for the employees of the Christensen Construction Company. The engineer who was operating the work train which struck Anderson testified that he knew men were at work at or near the place where Anderson was killed. There was nothing to obstruct his view for a distance of at least 1,000 feet from where Anderson was struck. Anderson's work required him at times to be upon defendant's railroad track. The engineer further testified that he received train orders when he started his train from the point about 1,000 feet east of the place of the accident; that he began to read the orders as

soon as he received them; that he did not look down the track while he was reading the orders; that he did look down the track between the reading of the orders. Under the facts in this case, it was clearly the duty of the operator of defendant's work train to keep a lookout for persons who might be upon or near the track over which the train was moving. The evidence is sufficient to support a finding that such duty was not performed and that, if a proper lookout had been kept, Anderson would have been seen in time to have avoided the accident which resulted in his death.

One other question remains to be determined: Does this record show as a matter of law that Anderson at the time in question was negligent and that such negligence on his part was the proximate cause or a proximate contributing cause of his injury and death? It is made to appear that, at the time Anderson was struck, the "dinky" train which was used by the Christensen Construction Company for hauling gravel was standing on the north track for the purpose of being loaded. It also appears from the evidence that the steam shovel was equipped with a whistle which at times was blown as a signal for the men employed in the construction work. It is also reasonable to assume that the dinky engine was equipped with a whistle and a bell. It further appears that the steam shovel created considerable noise while in operation. Under such circumstances the blowing of the whistle and the ringing of the bell on defendant's work train was not as likely to attract attention as it would if these other noises were not present. The testimony shows that Anderson was engaged in the work of removing pipes from the pipe line a short time before he was killed. While there is some evidence tending to show that Anderson could have removed the pipes before defendant's work train arrived at the place of the accident, the jury would be justified in finding that he was engaged in his work at the time he was struck. The work train that ran over Anderson was not running on any schedule time.

Independent of any evidence, it must be assumed that Anderson was exercising due care for his own safety. The burden was on the defendant to show the contrary. The law applicable to a state of facts such as is presented by this record is stated by Thompson's Commentaries on the Low of Negligence (2d Ed.) vol. II, p. 537, §§ 1839 and 1840, in the following language:

1839. "Persons lawfully at work in repairing a. railway track, or in repairing a highway where it crosses a railway track, cannot be expected to pursue their labors and at the same time maintain a constant lookout for an approaching train. They are passive, and are not a source of danger to the train; those who are driving the train are active, and are handling and in control of the instrument of danger and mischief. The obligation of reasonable care, which the law puts upon the railway company under these circumstances, therefore demands nothing less than an active vigilance in favor of persons thus lawfully at work upon the track, and the giving of seasonable danger signals to arouse their attention and enable them to get out of the way before it is too late."

1840. "A. person employed by one who has entered into a contract with the railroad company to do a job of work upon its road, is obviously entitled to this measure of care,—and this, although the contractor may have entered into an agreement with the railway company whereby the latter is released from all claims for injuries to subcontractors, workmen, and others, by reason of the negligence of the servants of the company. Such an agreement is inoperative as against the employee of the contractors, unless he is made privy to it in some other way than by the mere fact of being employed by the contractor. A person thus employed by an independent contractor is neither a servant of the railway company nor a trespasser on its track, and, if free from contributory negligence, is entitled to recover for injuries inflicted upon him by the negligence of the servants of the company."

It is urged on behalf of the defendant that there must be some positive and certain testimony pertaining to Anderson's death to justify submitting the case to the jury, and that there is no such evidence in the case. In support of such contention, the following cases are cited: *Kansas City Southern Railway* v. *Jones,* 276 U. S. 303, 48 S. Ct. 308, 72 L. Ed. 583; *Patton* v. *Texas & Pacific Railway Company,*

179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; *Fritz* v. *Salt Lake & Ogden Gas & Electric Light Company*, 18 Utah 493, 56 P. 90; *Tremelling* v. *Southern Pacific Company*, 51 Utah 189, 170 P. 80. The facts in the foregoing cases are readily distinguishable from the facts in this case. In this case there is no uncertainty as to what caused Anderson's death. The evidence conclusively shows that he was struck by defendant's work train. There was nothing to prevent the engineer from seeing Anderson as the train approached the place where he was at work a short time before he was killed. We are of the opinion that this cause should have been submitted to the jury on the alleged negligence of the defendant in failing to keep a lookout as the work train approached the place where Anderson was killed and the alleged contributory negligence of the deceased. The appellant has other assignments of error, but, as the claimed errors are not likely to arise upon a retrial, we deem it unnecessary to consider them.

The judgment is reversed, and the cause remanded to the district court of Summit county, with directions to grant a new trial. Appellant is awarded costs.