EARLE et al. v. SALT LAKE & UTAH R. CORPORATION
et al.

Nos. 6838-6840.   Decided February 5, 1946.   (165 P. 2d 877.)

See 52 C. J., Railroads, sec. 2074; 44 Am. Jur., 755 et seq.

*Judd, Ray, Quinney & Nebeker*, of Salt Lake City, for appellants.

*Fisher Harris, Homer Holmgren*, and *Clarence M. Beck*, all of Salt Lake City, for respondents.

LARSON, Chief Justice.

By stipulation the cases of the three plaintiffs were consolidated for trial, as all three cases involve the same factual situation, and the same evidence. Upon trial in the District Court of Salt Lake County, judgment against defendants was given in favor of each plaintiff. Defendants appeal.

Plaintiffs, all soldiers stationed at Camp Kearns, were passengers in an automobile driven by another soldier named Larsen. None of the passengers in the car knew one another, and none of them knew the driver. Larsen, driving into Salt Lake picked them up near the gate at Kearns. From Kearns, the automobile went north on 48th West Street, toward Salt Lake City. While so traveling north, the automobile collided with a westbound interurban train operated by defendant at the intersection of 48th West Street and the tracks of the Salt Lake & Utah Railroad Corporation. At and near the scene of the accident, the railroad right-of-way is bordered by orchards and trees. About 370 feet south of the railroad crossing, and next to the northbound traffic lane of the highway is a highway cross-arm giving notice of a railroad crossing. Near the crossing and within the railroad right-of-way there is a conspicuous black and white railroad cross-arm on each side of the highway. Undisputedly the occupants of the car, at least those who testified, saw these cross butt signs, warning of a railroad crossing, though nothing was said about them to the driver of the car. As to whether he saw them or not we are not aware, as he did not testify at the trial. At any rate the car did not

slacken speed nor did the driver appear to heed the warning of these signs until the train actually entered the intersection. The car was then apparently too close to stop, though the brakes were applied with sufficient force to cause one wheel to drag and leave a skid mark on the pavement. The car collided with the front end of the train. The train was still moving at the time of collision, and dragged the car 15 feet to the west before it came to a stop. One of the occupants of the car was killed, and the three plaintiffs suffered bodily injuries. As to speed of the vehicles, testimony is that the car was traveling somewhere between 10 and 60 miles per hour, and the train between 5 and 25 miles per hour. As to whether the train sounded a whistle for the crossing there is a dispute in the testimony which we think should be determined by the jury. It is rather definite that the train did whistle just as it emerged onto the highway, as every witness but the plaintiffs testified to having heard this whistle. The crossing was at grade, the tracks being nearly flush with the surface of the highway. The vegetation growing along the east side of the highway, would somewhat obstruct the view of the track for some distance to the east. The accident occurred on a clear sunshiny day.

The first two assignments of error, denial of motions for directed verdict, and for a new trial, go to the same questions, and we shall consider them together. Defendants argue that the evidence shows as a matter of law that defendants were without negligence, that plaintiffs were guilty of contributory negligence, and therefore either the motion for directed verdict or for new trial should have been granted.

The question of the degree of care which a guest in an automobile or other vehicle must exercise for his own safety has been before this court many times. One of the first cases was *Atwood* v. *Utah Light & R. Co.*, 44 Utah 366, 140 P. 137, 139, wherein we said:

"It no doubt is the law, as contended by appellant's counsel, that every occupant of a vehicle, in which he is riding, must always exer-

cise ordinary care for own safety, and if, by the exercise of such care, he could avoid injury to himself, but fails to do so, he cannot recover, regardless of the fact that he had no control or direction of the vehicle in which he was riding at the time of the accident and injury. But, as has been well stated by the Supreme Court of Minnesota in *Howe* v. *Minneapolis, etc., R. Co.*, 62 Minn. 71, 64 N. W. 102, 30 L. R. A. 684, 54 Am. St. Rep. 616, 'we think that it would hardly occur to a man of ordinary prudence, when riding as a passenger with a competent driver, who he had no reason to suppose was neglecting his duty, that he was required, when approaching a railway crossing, to exercise the same degree of vigilance in looking and. listening for approachig trains that he would if he himself had the control and management of the team.'

"This seems to us good sense as well as good law."

The court then went on to say that while he need not exercise the same degree of vigilance as the driver, the guest could not sit still without protest and allow the driver to go forward into a position of imminent peril. In conclusion, the court held the driver's negligence not imputable to the guest where it was shown that she had no control over the vehicle, and no reasonable apprehension of peril. Citing *Lochhead* v. *Jensen*, 42 Utah 99, 129 P. 347. In *Lawrence* v. *Denver & R. G. R. Co.*, 52 Utah 414, 174 P. 817, 820, it was said:

"The only inference permissible from the evidence is that the warnings and signals mentioned were given. The alleged failure of plaintiff and Bird to hear one or more of them, their failure to observe the smoke issuing from the engine, or to hear the rumble and noise of the fast-moving train in time to have avoided the accident, cannot, in the face of the undisputed evidence, be accounted for or explained on any theory other than that of indifference, inattention, and lack of ordinary care and caution on their part. Each of them testified that he was familiar with the crossing, having passed over it many times. Furthermore, it is a well-recognized rule that a steam railroad track in actual use is a constant warning of danger, and its presence is sufficient, as a matter of law, to put a reasonably careful person approaching it on notice of such danger, and it is the duty of such person to look and listen before crossing it."

The holding therein was that the guest, failing to see the train, where a view was apparently unobstructed, and warn-

ing signals given, was guilty of contributory negligence as a matter of law. In *Shortino* v. *Salt Lake & U. R. Co.*, 52 Utah 476, 174 P. 860, 866, it was said:

"* * * if there is any substantial doubt whether a plaintiff was or was not guilty of contributory negligence, or whether, if negligent, such negligence was the proximate cause of the injury, the court cannot determine the right to recover as a matter of law, but must submit the question of contributory negligence or of proximate cause, or both, to the jury as questions of fact. Where, however, the facts are conceded, or there is no conflict in the evidence, and upon a consideration of all of the evidence, and the legitimate inferences that may be deduced therefrom, but one conclusion is permissible, then both questions are questions of law, and must be determined as such by the court. * * *

"While it is true that the traveller, in attempting to cross a railroad track at a public crossing, is required to exercise only ordinary care, yet what constitutes ordinary care under such circumstances, or, as it is sometimes termed, 'the measure of duty,' is prescribed by law, and therefore is not left to the whim or caprice of either court or jury. The measure of duty in such case is to look and listen, and, under certain circumstances, it may even be necessary to stop."

The above quotation referred to the duty of the driver in crossing the track rather than to the duty of a guest riding in the car, but in *Montague* v. *Salt Lake & U. R. Co.*, 52 Utah 368, 174 P. 871, 872, the court considered the duty of a guest riding in the automobile in that same collision. The testimony was that the guest riding in the front seat, neither heard the train nor the whistles, nor saw any of the warnings placed near the track. After saying that it taxes the credulity to believe this, the court said:

"* * * the question of whether her conduct and inaction constituted negligence is not so positive and clear that all reasonable men must necessarily arrive at the same conclusion as is the case respecting the conduct and duty of Shortino, the driver of the automobile in question * * * the plaintiff was not charged with the same strict legal duty of keeping a lookout and being watchful as the owner and driver of the automobile, Mr. Shortino.

"The rule applicable here, which is adopted by the Supreme Court of Minnesota in the case of *Cotton* v. *Willmar & S. F. R. Co.*, 99 Minn. 366, 109 N. W. 835, 8 L. R. A., N. S., 643, 116 Am. St. Rep. 422, 9

Ann. Cas. 935, which case is cited and followed in the Atwood case, supra, is stated thus: 'The rule which has met with general approval in the more recent cases makes the passenger responsible only for his personal negligence, and leaves it to the jury to determine whether, under the circumstances, he was justified in trusting his safety to the care of the driver and not looking or listening for himself. The negligence of the driver is thus not imputed to the guest or passenger, but the circumstances may be such as to make it the duty of the passenger to look and listen and attempt to control the driver for his own protection. * * *' "

The court goes on to conclude that plaintiff passenger was not guilty of contributory negligence as a matter of law, though expressing some doubt about whether as a matter of fact she might not have been negligent. In *Cowan* v. *Salt Lake & U. R. Co.*, 56 Utah 94, 189 P. 599, 605, suit was brought by a second passenger in the Shortino car. The court gives an exhaustive review of cases from all states, and concludes by approving the rule laid down in the *Atwood* case, and the Minnesota rule of *Cotton* v. *Willmar & S. F. R. Co.*, quoted supra. It is announced as the rule that contributory negligence should be left to the jury *"unless that question is free from substantial doubt."* (Italics added.) To the effect that the driver's negligence is not imputed to an invited guest, is *Haarstrich* v. *Oregon Short Line R. Co.*, 70 Utah 552, 262 P. 100. That case, however, was decided on the question whether defendant's negligence was the proximate cause of injury. This question we shall consider later herein.

From these authorities, it is plain that negligence of a driver is not imputed to a guest in the vehicle, but that the guest has a duty to exercise reasonable care as a guest for his own safety. When a guest is negligent, or when he is not justified in trusting the skill and care of the driver are ordinarily questions for the decision of the jury. The evidence herein is not such as to make plaintiffs guilty of negligence as a matter of law. To all appearances Larsen was a competent driver, and the evidence is susceptible of a finding that he was driving the car at a

reasonable speed, and apparently keeping a proper lookout. Therefore, the mere fact that plaintiffs did not call his attention to the presence of the track, as indicated to them by the cross butts, is not in and of itself, negligence as a matter of law. This matter was properly submitted to the jury.

Defendants next argue that their negligence, if any, as a matter of law, was not the proximate cause of the injury. Certainly under the state of the record, with a conflict in the evidence as to whether any crossing warnings were given by the engineer, the question of whether they were negligent was properly for the jury. Defendants further urge that the evidence is conclusive, that from a point on the highway approximately 123 feet south of the track there was a clear and unobstructed view of the track for approximately 84 feet east from the east edge of the highway, that since the train was traveling much slower than the automobile the automobile must have traveled the last 123 feet before the collision while the train was moving on the track toward the crossing in full and unobstructed view of the driver of the car; that this in itself was ample warning to the driver of the automobile that the train was approaching, and therefore his failure to heed this warning was the sole proximate cause of the accident. Upon this point, *Haarstrich* v. *Oregon Short Line R. Co.*, supra, is cited and relied on by defendants. However, that case is not here determinative. There the view was unobstructed for 900 feet, and findings were made by the jury as to speeds of the train and the automobile. In short, from the evidence, it was conclusive that had the driver looked, he must have seen the train, for the train was upon the crossing all that time. In the instant case, the train did not enter the crossing until the automobile was too close to the truck to stop and avoid the collision. The duty of a driver to see a train that is approaching a crossing but not in the intersection is not as great as it is to see a train which is on the crossing all the time while he travels an ample distance to see and stop. The law requiring the oper-

ator of a train to signal its approach to a crossing either by the blast of a whistle or the ringing of a bell is a safety measure, designed for protection of people using the highway, to attract their attention to the fact that a train is approaching by giving such persons the opportunity of becoming aware of the approaching train through the sense of hearing as well as the sense of sight. The duty of the train crew to signal its approach to the crossing and the duty of user of the highway to look and listen are correlative when both are approaching a crossing. If either party has failed in its duty in this regard it cannot be heard to say that as a matter of law the other party's delict was the sole proximate cause of the collision. It is not the province of the court to say that had the train whistled or rang a bell to signal its approach, the driver of the car would not have stopped or slowed down and thereby avoided the collision. That is properly a question for the trier of the fact. *Olson v. Denver & R. G. W. R. Co.*, 98 Utah 208, 98 P. 2d 944, involves much the same factual situation as presented by the *Haarstrich* case. A motorist crashed into a stationary railroad car on a crossing, and this court held that in such situation negligence of the railroad, if any, was not the proximate cause of the injury. The court also said that the presence of the train on the crossing was itself warning to the approaching motorist, without other signals being given. This rule of law cannot be applicable herein. The train came onto the crossing when the car was within less than stopping distance. Had the evidence been without dispute as to the sounding of the crossing whistle, a different situation would be presented, but the evidence would sustain a finding that no whistle was sounded nor other warning given until just as the train entered the crossing, when it was too late. Under this factual situation, what we said in *Pippy* v. *Oregon Short Line R. Co.*, 79 Utah 439, 11 P. 2d 305, 310, is particularly apt.

"Still, and as we also said in the Clark case [*Clark* v. *Union Pac. R. Co.*, 70 Utah 29, 257 P. 1050] the giving of signals or the failure to give them has a bearing on the question of discovery of a train

by the traveler in the exercise of due care and in making of proper uses of his faculties of sight and hearing. That is but common sense, and no one will hardly [sic] deny that the timely sounding of the whistle or the ringing of the bell on the engine of an approaching train will greatly aid in discovering its approach."

The above statement has even more force in the instant case where the train being a single car electric train would give less warning of its approach by the noise of its operation than would a steam train consisting of a number of cars.

Since the evidence would sustain a finding that defendants were negligent and that their negligence proximately contributed to or caused the accident, it must follow that defendants' contention that the negligence of the driver was as a matter of law the sole proximate cause of the accident, is not well taken, and that question was properly submitted to the jury.

The remaining assignments of error deal with instructions given to the jury and the court's refusal to give other instructions requested by defendants. Complaint is made to Instructions Nos. 11, 12, 13 and 14 as given by the court; and to the court's refusal to give defendants requests Nos. 6, 9, 11 and 16. To set out the instructions given, and also those refused would unnecessarily prolong this opinion and serve no useful purpose. In Instruction No. 11, the court defined the duty imposed by law on defendant at intersections. Complaint is made that this unduly emphasizes defendant's duty because plaintiff's duty is not also set forth in that instruction. In Instructions Nos. 17, 18 and 19 the court defined the duty imposed on plainlong this opinion and serve no useful purpose. In Instruction tions dealing with the duty of the respective parties closer together in the charge. The charge read as a whole is not subject to the point urged as to Instruction No. 11.

The objection to Instruction No. 12 is based upon the theory that the negligence of the driver was, as a matter of law, the sole proximate cause of the accident. What was

the proximate cause of the accident was clearly a jury question, and that is where the instruction left it.

Instruction No. 13 is assaulted upon the ground that the court advised the jury that defendants when approaching a crossing must either sound a whistle or ring a 20-pound bell. The argument is that prior to 1943 such was the law, but the statute was amended in 1943, to eliminate the requirement that the bell weigh 20 pounds. However, the requirement that a bell be rung or whistle blown is still in the statute. There is no evidence about the weight of the bell on the train, but the evidence is conclusive that no bell was rung as required by statute. The objection is wholly academic and could not have influenced the jury.

Instruction No. 14 is attacked on the ground that it is an unqualified declaration that the plaintiffs are as a matter of law absolved from the negligence, if any, of the driver. The language of the instruction is not subject to the objections urged. As far as the instruction goes, read in its natural import, it is a correct statement of the law. The instruction immediately following, being No. 15, completes No. 14, and effectively answers the objections urged.

As to defendants' requests, not given, request No. 6 is given nearly verbatim in Instruction No. 17 and again in No. 18. Request No. 9 is covered fully in Instruction No. 11. Request No. 11 applies to the driver of the car and not the guests and was therefore not proper in form. Request No. 16 is covered in substance by Instruction No. 15.

Defendants' objections to the charge is founded generally upon the theory that the negligence of the driver Larsen was in law the sole proximate cause of the accident. When that contention is resolved against defendants, most of the objections to the charge fall by the wayside.

Judgment affirmed. Costs to respondents.

McDONOUGH, TURNER, WADE, and WOLFE, JJ., concur.