## HUDSON v. UNION PAC. R. CO.

No. 7449. Decided June 19, 1951. (233 P. 2d 357.)

See 52 C. J., Railroads, sec. 1708. Railroad crossings, third party liability to automobile guest injured at. 5 Am. Jur., Automobiles, sec. 486; 90 A. L. R. 984.

*Edward W. Clyde, Allan E. Mecham* and *Woodrow D. White*, all of Salt Lake City, for appellant.

*Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray* and *Dan A. Alsup*, all of Salt Lake City, for respondent.

WOLFE, Chief Justice.

Mona C. Hudson sued the Union Pacific Railroad Company to recover damages for personal injuries suffered in a railroad crossing accident. She appeals from a directed verdict in favor of the defendant.

In the afternoon of May 1, 1948, Mrs. Hudson accompanied Mrs. Era Jones, the driver of the automobile, on a short pleasure ride outside Logandale, Nevada. The defendant's track runs in a general northerly direction and is practically straight for about one thousand feet north of the crossing here involved. The unimproved dirt road crossed the track at right angles and at a point 75 feet distant, it turned and paralleled it for 300 feet, then it turned away from the track and went down into a ravine. Mrs. Jones drove across the track and proceeded to the ravine for the purpose of reaching the main highway. The road was blocked, so they turned around and retraced their way to the crossing where the car was struck by defendant's freight train. A contour map prepared by a surveyor shows that the road is three to five feet lower than the track where they parallel each other and it is slightly upgrade, the last 75 feet where it approaches the crossing at a right angle. The train was estimated at traveling between 15 and 20 miles per hour, the car approximately 18 to 20 miles per hour. In order for the collision to have occurred the train must have been to the rear as the car proceeded along the 300 foot parallel stretch.

The complaint alleges that the defendant was negligent in failing to ring a bell or sound a whistle. There were no witnesses to the accident other than the train crew and the two women. The driver of the automobile, Mrs. Jones, did not appear at the trial. Plaintiff testified that she did not hear the bell or any other sound of the approaching train until she looked up and saw it just as the accident occurred. On cross-examination she reiterated, "Absolutely there was no whistle of any kind." She was sitting in the front seat on the right hand side and the train struck the car on that side. The windows in the car were down. She and Mrs. Jones were talking about hearing the "click" of the automobile transmission when 20 miles per hour speed was reached. Plaintiff was in a position where she would likely have heard a ringing bell. In behalf of the railroad,

the engineer testified that he sounded the regular crossing whistle—two longs, a short and a long—and turned on the automatic bell about two miles before the crossing. After the accident occurred, he ran to the automobile with the other crew members to aid the two women. Then he returned to the cab of the diesel engine to turn the bell off, which he had forgotten to do. It was an automatic bell operated by air pressure, controlled by a valve. He testified that he was so accustomed to hearing bells that in the excitement of the accident he did not notice it was still ringing until after he had talked to Mrs. Jones. The fireman testified that the whistle was blowing and the bell was ringing at the time of the collision. He testified that the engineer blew the whistle after he (the fireman) first saw the top of the car as it came up out of the ravine. He saw the engineer reach up and pull the whistle cord and turn on the valve which controlled the bell. He further testified that the bell was still ringing until after the engineer went back to the cab to turn it off. The brakeman testified that there was a whistle sounded and the bell was ringing. Three other crew members testified to the same effect. The conductor stated that the noise of the freight cars drowns out the sound of the bell in the caboose, but he heard it ringing after the train stopped. Plaintiff contends that this state of the evidence creates a conflict which must be resolved by the jury.

The issue here presented involves the relative probative value of so-called negative and positive testimony. The law in our jurisdiction concerning this problem has evolved from the following cases and language found therein. *Russell* v. *Watkins,* 49 Utah 598, 164 P. 867, 869.

"The weight of negative testimony [viz that the witnesses did not hear the defendant's automobile horn] ordinarily is for the jury to determine; but, when physical conditions and the attending circumstances are such as to render it highly improbable that they could hear, we think the rule should be and is otherwise."

A jury verdict for the plaintiff was reversed because testimony that the witness did not hear the horn sounded was not evidence of negligence that defendant did not honk his horn. In *Jensen* v. *Oregon Short Line*, 59 Utah 367, 204 P. 101, 104, the deceased's companion testified he heard no bell, but was paying attention to another noisy passing train. The crew of the train which struck the deceased testified their bell was ringing. The court stated:

"This is not a case in which the witness claims to have been listening for signals and failed to hear them. The witness in this case was not consciously listening at all. His attention was directed in another direction, and his mind was engrossed with other matters."

Judgment for the plaintiff was reversed. An important qualification to the rule was added by *Clark* v. *Union Pacific Railroad Co.*, 70 Utah 29, 257 P. 1050, 1053. At the time of that crossing accident it was very foggy and two school girls particularly listened for the train whistle in order to learn just how late they were for school. Two men were driving a team toward the crossing and they were cautiously alert for the sound of the train because they were unable to see in the fog. The court held that this evidence was of probative value and created a jury question as to the failure to give a warning. The opinion states,

"* * * it is not the fact of negative testimony, but the character of the negative testimony, which is regarded as not sufficient to support a verdict that signals were not given, or to raise a conflict with testimony that the bell was rung and whistle blown. It is clear that, where one witness testifies that the whistle was sounded and the bell rung, and another witness of equal opportunity to know the fact testifies that *he was listening* to see whether the whistle did or did not sound and the bell ring, and that the whistle did not sound nor the bell ring, positive testimony is met by positive testimony; and, if the witnesses are of equal credibility, the testimony of the one is entitled to as much weight as the other."

Thus the rule required that before a jury question was created concerning conflicting testimony that warning signals were given,

"*it must be made to appear that they were paying some attention* to what actually occurred and that they were in a position where they

could and did observe what was done or what was not done." *Ander-son* v. *Union Pacific Railroad Co.*, 76 Utah 324, 289 P. 146, 149.

In *Earle* v. *Salt Lake & Utah Railroad Co.*, 109 Utah 111, 165 P. 2d 877, 878, the court briefly stated,

"As to whether the train sounded a whistle for the crossing there is a dispute in the testimony which we think should be determined by the jury."

Defendant now maintains that no jury issue of negligence in failing to sound a warning was made out, because it does not appear that Mrs. Hudson was affirmatively listening or paying attention to determine whether the train was going to whistle or not. Admittedly this was necessary under the *Clark* and *Anderson* cases, supra, in order to change the characterization of negative testimony that no warnings were heard to positive testimony to the effect that, "I was listening for the whistle and bell but they were not given." Such a distinction governing the relative probative value of testimony and concluding plaintiff's right to a jury trial is not sound. All that need appear is that the witness was so situated in relation to the train at the time it is claimed the warnings were given that said warnings would have awakened her attention to them. The circumstances bearing on her opportunity and capacity to hear, such as possible deafness, pronounced wind direction affecting sounds, the speed and noise of the train and of the car, topography of the surrounding country, absorption in conversation or with her own thoughts or devices and any other factors which would enable the fact finder to evaluate the probative force of her testimony should be considered. The convincing power of testimony that a sound was not heard varies according to the opportunity of the witness giving it to hear and observe, but a passenger in an automobile need not persistently keep his ear cocked for the sound of a train. In this case the plaintiff is necessarily confined to negative evidence in proving the fact that the whistle or bell was not sounded. If such evidence is unworthy of belief simply because it is negative, then a plain-

tiff in like circumstances must nearly always fail. The issue is fundamentally a question of the credibility of witnesses and considering the close proximity of the car to the train while they travelled parallel to each other, Mrs. Hudson was in a position where it is likely that she would have heard the whistle, or at least the bell, and as there is no evidence that her attention was so absorbed in other matters that she would not have heard, a jury question is presented.

The negligence of Mrs. Jones, the driver, is not imputable to the plaintiff, a passenger invitee or guest of the driver, *Lockhead* v. *Jensen*, 42 Utah 99, 129 P. 347; *Atwood* v. *Utah Light & R. Co.*, 44 Utah 366, 140 P. 137; *Martindale* v. *Oregon Short Line R. Co.*, 48 Utah 464, 160 P. 275. The plaintiff can only be contributorily negligent as a matter of law for failing to exercise that degree of care customarily expected of a reasonable prudent passenger under like circumstances. *Montague* v. *Salt Lake & Utah Ry. Co.*, 52 Utah 368, 174 P. 871; *Cowan* v. *Salt Lake & Utah Ry. Co.*, 56 Utah 94, 189 P. 599. In view of the evidence most favorable to her, plaintiff is not contributorily negligent as a matter of law for the following reasons. First, the general background. Mrs. Hudson is a resident of Salt Lake City, but had visited Overton, Nevada, three or four weeks every year while her husband attended to his shipping business. Her last prior visit to Overton was in 1946. The accident happened in 1948. During the four months she was in Overton before this accident occurred, she had not traveled this road. She was an out of town visitor, not familiar with this crossing, though she had been over it before in her lifetime. She was not acquainted with the train schedule. This was a local branch line running through broken desert country. The train made only one round trip a day. While Mrs. Hudson was in Overton, she stayed at a hotel managed by Mrs. Jones. She had gone riding with Mrs. Jones often and testified that she was a competent driver and appeared to be paying attention to

her driving at the time she approached the railroad crossing.

Much argument is submitted upon whether the plaintiff could have observed the train during the time she traveled out of the ravine and parallel to the track for 300 feet, then directly towards the crossing for the last 75 feet. The contentions are based upon various estimates as to the speed of the car and train and also upon conclusions drawn as to the distances traveled and relative position of the train to the car as the car came out of the ravine—drawn from the only positive undisputed fact in the case, that a collision did occur. A jury could find that plaintiff could have observed the train as the car came out of the ravine and proceeded parallel to the track. But in view of her confidence in Mrs. Jones' competence as a driver and greater familiarity with the crossing and the necessity of turning her head to the right rear in order to see, we are not prepared to say as a matter of law that the reasonably careful passenger had a duty to look under the circumstances. If she sat facing the driver with her back to the window or was simply absorbed in the discussion of the automatic gear shift, a jury could conclude that she acted in a reasonable manner. Obviously she was not maintaining a lookout but was relying on the driver. The jury could find that the defendant railroad had not sounded the whistle or rung the bell as required by statute and the inattention or reverie of the plaintiff might have been roused if the warning signals had been given so as to notify her that a train was approaching the crossing. Whether the plaintiff conformed to the standard of care of a reasonable prudent passenger under like circumstances is a question for the jury.

Defendant contends that the sole proximate cause of the accident was the fact that the automobile stalled momentarily on the rack just before it was struck. However, a jury could reasonably find that the failure to give the warning signals, if such was found to

be the fact, was a proximate cause of the collision. Nothing needs to be added to what was stated by this court regarding proximate cause in *Earle* v. *Salt Lake and Utah Ry. Co.,* 109 Utah 111, 118, 165 P. 2d 877, 881.

The judgment is reversed. Costs awarded to the appellant.

WADE and McDONOUGH, JJ., concur.

LATIMER, Justice (dissenting).

I dissent.

I would affirm the judgment of the trial court for the reason that plaintiff was guilty of contributory negligence as a matter of law.

A guest in an automobile is not charged with the negligence of the driver, but if he would avoid the defense of contributory negligence when injured by the negligence of another he must exercise such care for his own safety as an ordinary prudent or reasonable man would exercise under like circumstances. Both the driver and guest are measured by the same standard, but the conduct of the guest to meet the standard need not equal that of the driver.

The rule of behavior mentioned above is easy to state, but difficult to apply to the conduct of a plaintiff in many situations. This is particularly true in guest cases as the standards must be tailored to meet a person's natural reluctance to interfere with the operation of the car in which he is invited to ride. However, the difficulties involved in applying a measuring rod should not be used as a reason for submitting all cases to a jury. There must be some standard by which the trial court can determine, as a matter of law, that the conduct of the guest did not meet the minimum requirements of due care. If we use the "reasonable man" test there ought to be an opportunity for the trial judge to compare the acts of the guest with those of

the vague and suppositious man. If he does so and concludes that all reasonable minds would find that the guest failed to meet the standards, he should grant a motion for a directed verdict. As I understand our scope of review on appeal, we determine whether, from the facts before him, the trial judge correctly concluded that all reasonable minds would find that the guest did not conform to the standards of a reasonable person.

It may appear paradoxical that I should state the foregoing principle and then, after three of my associates have held the facts of this case permit reasonable minds to differ, that I hold they do not. The paradox, if it exists, is brought about by the specifications each judge writes for his assumed "reasonable man." The path of departure is, therefore, not the principle but the standards by which we compare.

Experience has taught, and I believe reasonable men know, that railroad crossings are places of great danger. The speed, weight, and lack of control over stopping and maneuverability of trains have fixed upon the public the necessity of approaching railroad tracks with care and caution. The stop, look and listen concept is not without reason, and many tragedies would be averted if only the "look" requirement was complied with. I mention these facts for the reason that I believe railroad crossing accidents fall into a different category from other traffic collisions, and that ordinary care requires a higher standard of conduct on the part of the parties who might become involved in a collision. Because of the dangers involved, the duty of both the driver and the guest to be observant is increased.

Restatement of the Law of Torts, Paragraph 463, defines contributory negligence as follows:

"Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, co-operating with

the negligence of the defendant in bringing about the plaintiff's harm."

The next paragraph (Paragraph 464) of that work defines standard of conduct in the following manner:

"Unless the plaintiff is a child or an insane person the standard of conduct to which he should conform is the standard to which a reasonable man would conform under like circumstances."

In measuring plaintiff's conduct to determine if she meets the permissible standards of a reasonable person, the facts I relate are as testified to by her, with the exception of the data taken from a map. She was a fully matured woman, who was possessed of good sight and hearing. She had lived in the area where the accident occurred and knew the railroad operated trains over the track involved. She was not under any emotional stress and the purpose of her journey did not require fast travel. She and the driver were out for a pleasure drive and were proceeding in a leisurely manner. The accident happened at mid-afternoon, when visibility was excellent. The car had just been driven over the railroad crossing, which was marked with cross arms and was slightly raised over the ground level. Plaintiff, after the car was turned around, knew that it was again necessary to pass over the track. The time element between the first cross over and the return attempt was short and the knowledge of having to cross a track was fresh in her mind. The map introduced in evidence and the testimony of witnesses established that the turn-around point in the ravine was approximately 600 feet from the crossing. The east edge of the ravine and the point from which the track crossing would be clearly visible to occupants of the car was at least 400 feet. If we start at this point and travel toward the crossing, the road for roughly 80 feet runs somewhat perpendicular to the track, possibly at an angle of 60 degrees. Taking into account the direction of travel of the car and the train, plaintiff would be faced slightly away from the oncoming train, but a slight

turn of the head or a slight glance to the right would permit her to see at least 500 feet of the track over which the train was to travel. The road turns and parallels the track for approximately 250-300 feet, but the lateral distance between the two is not more than 80 feet at any place. At a point at least 75 feet from the crossing, the road turns to the right and is again almost perpendicular with the track from the point of the turn to the crossing. As to topography, the elevations on the map show that for the 400 feet of roadway from the ravine to the crossing there is a maximum variation of 4 feet from the lowest to the highest point; and that, as between the road and the track, the greatest variance in height is 4.8 feet. These variations are computed from ground levels and do *not* take into account the height above the road of plaintiff as she was seated in the car nor the height of the train above the track, which varied from 14 to 16 feet. Some mention is made of brush growing on the land and the presence of rocks, which might have interefered with her line of sight, but I believe the evidence is conclusive that plaintiff, after coming out of the ravine, would have an unimpaired view of the train for a distance along the track of approximately 500 feet and this distance would increase as the car neared the crossing. Moreover, she doesn't claim to have looked except at the time the car came up out of the ravine, and so her view could not have been obstructed by any natural obstacles.

Plaintiff was on the right of the driver and in a much better position to see the train as it was approaching on her side. She was awake. She was not reading, and she was not occupied except in a casual conversation. There were no incidents to distract her attention. She knew she was approaching the railroad track upon which she could expect railroad traffic. She further knew that the driver would have restricted vision of trains approaching on plaintiff's side. There was no highway traffic to watch. She makes no contention that there was any reason why she

was not able to make some observations. The speeds of the car and the train were substantially the same, and both were traveling at relatively low speeds. While the car was travelling along the track parallel to the road, the train and automobile must have been in close proximity to each other. The train, which was made up of the engine and ten or twelve cars, was on her side, and the window was down. She heard no whistle, no bell, and no noise from the train. She was entirely unaware of its presence on the track until the automobile was on the crossing, and yet at all times it was slowly moving towards the point of collision. When she first saw the engine it was so close she hardly had time to make an outcry before the impact. The speed of the automobile was such that one look to her right at any time before reaching the crossing and a cautionary remark to the driver would have prevented the collision.

Fitted together, these facts hardly present a picture of a guest using reasonable care for her own safety. With reasonable opportunity to see what was readily observable, with ample time to observe, with full knowledge that she was approaching a place of possible danger, and without apparent reason or excuse for failure to see, plaintiff arrives at the point of collision without ever having seen the approaching train until just before the impact. While back seat driving might not be desirable, a statement from a guest "here comes a train" ought to be encouraged.

If, as proclaimed by the majority opinion, under these facts and circumstances a trial judge could not find that plaintiff failed to use due care for her own protection, then I pose this question: Under what facts and circumstances is a passenger in a car approaching a known railroad crossing required to look for oncoming trains? Certainly, before overturning the trial court's conclusion, we ought to be able to point out some evidence that plaintiff either made some effort to see the crossing could be made in safety or that she had reasonable grounds to excuse her for not looking.

Mr. Chief Justice WOLFE, in his opinion for the court, cites some of our previously decided cases dealing with the contributory negligence of a guest. When consideration is given to the facts of each of those cases they were correctly decided. However, they offer little help in solving the problem confronting us because they merely express a conclusion of the court that what the guest did or did not do under the facts of that particular case charged or did not charge him with contributory negligence as a matter of law. If contributory negligence of plaintiff is determined by comparing her conduct with the standards erected for the conduct of a reasonable person under similar conditions, the conduct of others under different conditions would hardly be a fair comparison. But, even when I attempt to follow the guideposts erected by those previous pronouncements, I find plaintiff's conduct far short of that expected of a prudent person.

We long ago discarded the concept that the same duty that rests upon the driver rests upon the guest. See *Montague* v. *Salt Lake and Utah Ry. Co.*, 52 Utah 368, 174 P. 871. But I do not believe we have previously gone so far as to hold that the guest may rely utterly and entirely upon the driver if he does not have knowledge of the driver's incompetency. It is my opinion that in this case we embrace this rule, even if we do not adopt it.

I believe the better reasoned cases strike a middle ground between the two mentioned extremes. While it is impossible to find a case factually on all four's with the present action, I believe the Supreme Court of Connecticut in a somewhat similar case, *Boscarello* v. *New York, N. H. & H. R. Co.*, 112 Conn. 279, 152 A. 61, 63, reasoned that conduct closely approximating that of plaintiff charged a guest with contributory negligence as a matter of law. The court in that case said:

"Because of the very limited nature of the duty of a passenger in an automobile to exercise care to guard himself from dangerous in-

cident to its operation, the question of his contributory negligence must usually be one of fact for the jury. There are, however, few situations where watchfulness for his own protection is so within the bounds of reasonable care upon the part of a passenger in an automobile as in the approach to a grade crossing known to him. Almost with unanimity courts have held that in such situations, and in absence of circumstances of excuse, there is a duty resting upon him to be reasonably watchful for the approach of trains. Notes 18 A. L. R. p. 315, 22 A. L. R. p. 1294, 41 A. L. R. page 767, 47 A. L. R. p. 295.

"In the case at bar the deceased was riding with a driver who was unfamiliar with conditions at the location, and was looking straight ahead watching the road before him. The deceased, on the other hand, knew of the existence of the track, and must have been familiar with the situation at the crossing. He was seated upon the front seat upon the side from which the train was coming. The view of the track was somewhat obstructed, particularly for the driver on the left side of the seat. The deceased, had he looked with any degree of care commensurate with the needs of the situation, could have seen the train. The automobile was proceeding at only fifteen to twenty miles an hour, and a warning to the driver in time to stop it before reaching the track would not have introduced into the situation any new element of danger, and in all reasonable probability would have been effectual to prevent the accident. No circumstances justifying the failure of the deceased to take any precautions for his own safety appear. We cannot do otherwise than hold that the deceased was guilty of contributory negligence as a matter of law. We cite a few of the many cases in which, in analogous situations, other courts have reached like conclusions. * * *"

The books are filled with cases dealing with the duty of drivers and guests involved in crossing collisions. A reference to them would add little to either side of this dispute as a reading of their facts readily shows they do not build a model by which we can gauge plaintiff. But the principles announced therein lead me to the conclusion that the trial judge in this case was correct in holding that plaintiff's acts and conduct did not approach a standard of care which required him to submit the cause to the jury. I believe he could say, as a matter of law, that she acted as an im-

prudent person rather than one who was using due care for her own safety.

CROCKETT, Justice, concurs in the dissenting opinion of Mr. Justice LATIMER.