Douglas Lee CURTIS, Plaintiff and Appellant,

v.

HARMON ELECTRONICS, INC., and the Denver & Rio Grande Western Railroad, Defendants and Respondents.

No. 15018.

Supreme Court of Utah.

Feb. 15, 1978.

3. 262 Or. 610, 500 P.2d 1052 (1972).

Anthony M. Thurber, Salt Lake City, for plaintiff and appellant.

E. Craig Smay, of VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for defendants and respondents.

MAUGHAN, Justice:

Plaintiff brought this action to recover for personal injuries sustained when a truck in which he was a passenger collided with a train belonging to the Denver and Rio Grande Western Railroad. At the close of all the evidence by both parties at trial, the court directed a verdict for the defendant. Plaintiff appeals, contending that the trial court erred in directing a verdict and that the issues should have been submitted to the jury. We agree with plaintiff, and reverse. The cause is remanded for trial.

Costs to plaintiff. All statutory references are to U.C.A.1953.

This collision occurred at a railroad crossing at 412 West on 9000 South in Salt Lake County. The truck in which plaintiff was riding was travelling east on 9000 South and collided with the second power unit of the south-bound train. Both the train and the truck were travelling approximately 50 mph at the time of the accident.

The crossing was equipped with warning lights and a bell which were in operation at the time, although testimony indicates that it was difficult to perceive whether the lights were flashing due to the bright midday glare of the sun. As one approaches the crossing from the west on 9000 South, the view of the tracks to the north is partially obscured by a line of houses and some trees.

Plaintiff's position on appeal is that a jury question exists as to whether the train sounded its whistle for the proper time before it entered the crossing. Plaintiff produced the testimony of four persons near the crossing at the time of the accident, three of whom stated they first heard the train whistle only a few seconds before the collision. Two of these were two women in a car which travelled over the crossing just before the train reached it. The passenger in this car stated they saw the train approaching the crossing from the north as they were driving west on 9000 South. They speculated whether they could get across the track before the train reached the crossing. They first heard the whistle when they were on the track, with the train approximately 300 feet away.

The third person, the owner of a gas station on the southeast corner of the crossing, was working on a truck in front of the station when he heard the train whistle, which caused him to look up. He estimated that he heard the whistle around five or six seconds before the collision occurred.

The fourth person did not recall hearing any whistle, although he remembered hearing the train itself approach.

The train engineer testified for the defendant he always sounded the whistle for every crossing as required. A Utah Highway Patrol officer testified he heard the whistle at a point four tenths of a mile north of the crossing.

The testimony of these persons indicates that the whistle was sounded four tenths of a mile from the crossing, and again approximately 300 feet from the crossing. The testimony conflicts on whether the whistle was sounded between these points. Three of plaintiff's witnesses claim to have heard no whistle before the last one sounded 300 feet from the road. The engineer states he remembers blowing the whistle "because I blow the whistle for every crossing."

The parties agree the law requires the train to sound a whistle or a bell before a crossing but disagree as to when. Section 56–1–14 states in relevant part:

Every locomotive shall be provided with a bell which shall be rung continuously from a point not less than eighty rods from any city or town street or public highway grade crossing until such city or town street or public highway grade crossing shall be crossed, but, except in towns and at terminal points, the sounding of the locomotive whistle or siren at least one-fourth of a mile before reaching any such grade crossing shall be deemed equivalent to ringing the bell as aforesaid; . . . .

The defendant asserts the meaning of this statute is, if the train chooses to sound its whistle instead of ringing a bell continuously for 80 rods prior to the crossing, it need only sound the whistle once at any point prior to one quarter of a mile from the crossing; thus, since the train did sound its whistle four tenths of a mile away, the statute was satisfied. This contention cannot stand, in view of the language and purpose of the statute. The statute requires a bell to be rung for 80 rods (one quarter mile) before the crossing, for the purpose of warning approaching traffic of the train's approach. The sounding of the whistle is a substitute for the bell, but there is no reason to assume the warning purpose is in anyway changed. The statute says the sounding of the whistle "shall be deemed equivalent to ringing [of] the bell as aforesaid." The clear intent of the statute is to require either the ringing of a bell or the sounding of a whistle for one quarter of a mile before entering the crossing.[1] Allowing the sounding of a whistle at any point before reaching one quarter of a mile from the crossing would produce obviously absurd results.

A sound rule of statutory interpretation is that a statute is presumed not to be intended to produce absurd consequences and that where possible it will be given a reasonable and sensible construction.[2] This Court recognizes its duty to render such interpretation of the laws as will best promote the protection of the public.[3]

The defendant had a statutory duty to sound the whistle for the last one quarter mile before the crossing, the violation of which renders defendant liable for all damages caused by such failure.

In reviewing a trial court's ruling pertaining to a motion for directed verdict, this Court reviews the evidence in the light most favorable to the non-moving party to afford him the benefit of all inferences which the evidence fairly supports. We will sustain the granting of such a motion only if the evidence is such that reasonable persons could not arrive at differing conclusions on the issue in controversy.[4]

1. It is of sufficient common knowledge to here note that railroads, by rule, require four blasts of the whistle; two long blasts, one short one, and a final long one, which continues through the crossing.

2. *City of Tahlequah v. Franklin,* 201 Okl. 36, 200 P.2d 417 (1948).

3. *Rowley v. Public Service Commission,* 112 Utah 116, 185 P.2d 514 (1947).

4. *McCloud v. Baum,* Utah, 569 P.2d 1125 (1977).

The defendant states that since the plaintiff has produced only negative testimony on the issue of whether the engineer sounded the whistle for the statutory distance, the trial court correctly directed a verdict for the defendant under the rule that negative testimony is insufficient to raise a conflict with positive testimony so as to require submission of the issue to the jury. Defendant further argues that in order to overcome this presumption that negative testimony is not competent to sustain a jury verdict, the plaintiff's witnesses must have been in a position to hear the whistle and must have actually listened for a whistle and not heard one.

While we agree that in certain circumstances negative testimony will be insufficient to support a jury verdict, this issue is primarily a question of the credibility of witnesses. Circumstances bearing on the opportunity and capacity of the witness to hear should be considered.

██ None of those persons testifying for the plaintiff was specifically listening for the train whistle, as would someone approaching the track in a dense fog. Were this the case with any of these persons, their testimony would clearly have probative value, and would be sufficient to go to the jury.[5]

On the other hand, where it appears the person whose negative testimony is offered was paying attention to another matter, such as another noisy passing train, his testimony is not of value.[6] The two women in the car and the gas station owner working in front of his station fit in neither of the two categories above. They were, however, situated near the crossing and were in favorable positions to have heard the whistle. The women did in fact direct their attention to the train before they reached the crossing, because they saw it coming and questioned whether they would make it safely across the tracks. Their testimony that they heard no whistle until they were actually in the crossing contains probative value.

The owner of the gas station looked up at the sound of the whistle, and was aware of it from that point on. There was nothing shown to be wrong with either his hearing, or the hearing of the two women in the car. They were all in excellent positions to have heard any whistle. In *Clark v. Union Pacific Railroad Co.,* supra, this Court stated:

> Though a witness was not specially listening for signals, or giving special attention to the occurrence, yet, if his attention was not engrossed or diverted to other things, and it being made to appear that he was in [a] position to hear, and in all likelihood would have heard them had they been given, his testimony that he heard none is still of probative value, and is not to be disregarded, . . . .[7]

This Court affirmed that view in *Hudson v. Union Pacific Railroad Co.,*[8] in which we noted it was not necessary for the plaintiff to show the person was affirmatively listening for the whistle. We stated:

> All that need appear is that the witness was so situated in relation to the train at the time it is claimed the warnings were given that said warnings would have awakened her attention to them. . . . [The witness] was in a position where it is likely that she would have heard the whistle, or at least the bell, and as there is no evidence that her attention was so absorbed in other matters that she would not have heard, a jury question is presented.[9]

We feel these principles apply to this case, and that the trial court erred in directing a verdict for defendant in view of the testimony of the women and the station owner. If such evidence is unworthy of belief simply because it can be characterized as negative, then a plaintiff in such

---

5. *Clark v. Union Pacific Railroad Co.,* 70 Utah 29, 257 P. 1050 (1927).

6. *Jensen v. Oregon Short Line,* 59 Utah 367, 204 P. 101 (1922).

7. See note 4, at p. 1053 of 257 P.

8. 120 Utah 245, 233 P.2d 357 (1951).

9. Id. at pp. 360, 361.

circumstances as these where he is necessarily confined to negative evidence must nearly always fail. We believe plaintiff was entitled to have the trier of fact consider the evidence.

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

CROCKETT, J., concurs in result.